The Methodist P. Church *vs.* Mayor and C. C. of Baltimore.—1848.

slave is a legacy, is as clear as that things which are equal to the same thing, are equal to one another.

The bequest of freedom to the slaves are legacies, and the executor is liable for the tax or duty on their appraised value. The decree in this case is reversed, and the cause remanded.

**DECREE REVERSED AND CAUSE REMANDED.**

---

THE METHODIST PROTESTANT CHURCH, *East Baltimore Station, vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE. *June,* 1848.

The legislature, by the acts of 1817, ch. 148, and 1838, ch. 226, conferred certain powers upon the corporate authorities of the city of *Baltimore*, in relation to the opening and widening of streets in said city.

That it is not essential to the validity of an ordinance of said corporation, executing the powers thus conferred, that it should state or indicate the act in execution of which it was passed.

If no power be stated as its basis, the ordinance will be regarded as emanating from that which would have warranted its passage; and if two such powers exist, it may be imputed to either, in conformity to which, its provisions show it to have been adopted.

The power to determine whether or not the public welfare and convenience require the widening of any particular street, is, by the act of 1838, ch. 226, vested *exclusively* in the *Mayor and City Council,* and whether their judgment be right or wrong, is no subject for revision or correction in a court of equity.

When notice to all persons interested in the opening or widening of any street, has been duly given by publication, as required by the act of 1838, ignorance thereof, in any party, can afford him no ground for relief, either in equity, or by appeal to the City Court. The law imputes notice, and will not admit testimony to disprove it.

The Court of Chancery, except as an appellate tribunal, never interferes to arrest, or set aside, the proceedings of courts of law, or other judicial tribunals, upon the ground of legal error therein, unless prompted by conscience, to prevent wrong and injustice, but leaves the party complainant to his remedy at law.

Where a party fails to avail himself of the means provided by law, for the redress of the wrong of which he complains, he is without remedy in a court of Chancery.

The law having given to parties considering themselves aggrieved by the proceedings of the street commissioners of the City of *Baltimore,* an appeal to *Baltimore* City Court, they can sucessfully seek redress only in that tribunal.

The testimony of but one witness is clearly insufficient to overthrow the responsive and positive denials of an answer.

HARVARD LAW SCHOOL LIBRARY

APPEAL from the Court of Chancery.

On the 28th April, 1847, the appellants, the trustees of the *Methodist Protestant Church, East Baltimore Station,* filed their bill in the equity side of *Baltimore* County Court, in which they allege that in their corporate capacity, they are the owners of a certain lot of ground situated on the corner of *Pitt and Aisquith* streets, in the city of *Baltimore,* on which is erected a building regularly used as a place of public worship, by the religious society embodied under the said corporate name. That this lot and building was so owned and occupied, at the time the *Mayor and City Council of Baltimore,* passed an ordinance providing for the opening and widening " *Little Aisquith* street," approved on the 20th April, 1846, and has ever since been so owned and occupied. That by the act of 1817, ch. 148, full power was given to said *Mayor and City Council* to open, extend, widen or straighten any street in said city, " upon the application in writing, of the proprietors of not less than two-thirds of any property which may be intended to be taken for such purpose," and by the act of 1838, ch. 226, like power was given them, to provide for laying out, opening, extending, widening, straightening or closing up, in whole or in part any street in said city, " which, in their opinion, the public welfare or convenience may require;" that on the 9th March, 1841, the said *Mayor and City Council* passed an ordinance entitled " an ordinance for exercising certain powers vested in this corporation, in relation to streets in the city of *Baltimore,*" by which a board of commissioners was created, with power and authority according to the provisions of the acts of Assembly, and ordinances of the corporation of said city, to open, &c., any street, &c. in said city, and to assess and tax the expenses thereof as thereby directed, " subject, nevertheless, to all such restrictions exempting certain descriptions of property from assessment, as are contained in any law of this State, or in this ordinance, or any other ordinance of this city ;" that by the laws of this State and ordinances of the city of *Baltimore,* houses for public worship are exempt from any tax to the State or the city. .

That afterwards on the 20th April, 1846, said *Mayor and City Council* passed another ordinance providing for the widening of "*Little Aisquith* street," by which, among other things it was ordered that the commissioners for opening streets, should proceed in all respects in the widening of said street, agreeably to the provisions of the said ordinance of the 9th March, 1841, but that by said ordinance of the 20th April, 1846, it was not declared, and does not in any manner appear whether the widening of said street was determined on, upon the application in writing of the proprietors of not less than two-thirds of the property intended to be taken in so widening said street; or whether in the opinion of the said *Mayor and City Council*, the public welfare and convenience required it; and that upon an inspection of the premises and of the plats made by said street commissioners, it manifestly appears that the widening of said street, as proposed, will not conduce to the public welfare and convenience; that said street commissioners not regarding the acts of Assembly and ordinances of the said city corporation, and the rights, privileges and exemptions of your orator, did not give the notice of sixty days required by the ordinance of March, 1841, before entering upon the duties assigned them, and did not in any manner conform thereto, but did assess the said lot and building a large sum of money, as and for a benefit conferred by the widening of said street, and that in other particulars their proceedings were erroneous and contrary to law, and in violation of the rights of your orator; that the collector of taxes for said city, acting under the direction of said city corporation, was about to sell said property for the payment of said tax. The bill then prays for an injunction restraining said corporation and its agents from attempting further to enforce said tax against your orator, and that the proceedings of said street commissioners may be quashed, and for general relief. On the same day the injunction was granted as prayed by *Baltimore* County Court.

The answer of the *Mayor and City Council of Baltimore* to

50    v.6

this bill, filed on the 9th July, 1847, admits the complainant to be a corporation and owner of the lot and building mentioned in the bill, but denies that said building is regularly used as a place of public worship by the religious society embodied under the corporate name of the complainant, and avers that said building, which is not connected with the complainant's meeting house, but separated from it by a private alley, consists of a two story brick house, the upper story of which is occupied by the sexton of complainant and his family as a dwelling house, and the lower story of which is used for the Sunday School of complainant and its class meetings and prayer meetings.     That complainant so used and occupied said building at the time of the passage of the ordinance of the 20th April, 1846.     Respondent admits the passage of the acts of Assembly and the ordinance of the 9th March, 1841, referred to in the bill, and also that of the 20th April, 1846, for the widening of "*Little Aisquith* street," and avers that the public welfare and convenience required the widening thereof, and that the ordinance so passed, was passed because in the judgment of the respondent it was required by the public welfare and convenience.     That the street commissioners entered upon their duties in regard to the widening of said street on the 20th April, 1846, and gave notice by advertisement inserted on the following day, and afterwards published in two of the daily newspapers published in the city of *Baltimore*, that they would proceed on the 24th June next ensuing, at 4 o'clock in the afternoon, at their office, to exercise the power and perform the duty assigned them, in regard to widening *Little Aisquith* street, agreeably to the provisions of an ordinance, entitled " An ordinance for the widening of *Little Aisquith* street," and of the ordinance, entitled "An ordinance to provide for exercising certain powers vested in this corporation, in relation to streets in *Baltimore* city," and according to appointment, proceeded to perform their said duty, and in so doing, assessed upon the said lot and building of the complainant, the sum of seventeen dollars, as and for a benefit conferred by the widen-

ing of said street,—and that the collector of this corporation is bound and will collect said assessment, unless restrained by this court. That this corporation in passing said ordinances, have, in all respects, observed the requisitions of the act of 1838, referred to in the bill, and that said street commissioners have strictly followed the said act and ordinances, and that all acts and proceedings in the premises are well and lawfully done, and should be enforced. Respondent further saith, that by the ordinances aforesaid, an appeal to *Baltimore* City Court is allowed to all persons improperly assessed by the commissioners of streets of the city of *Baltimore,* and that in said court, and not here, the case set forth in said bill is cognizable; and this respondent denies the jurisdiction of this court in the premises, and prays to have benefit of this objection, as if formally pleaded.

The deposition of *Zaccheus O. Bond,* taken before a justice of the peace, by consent of parties, was filed in the cause. The witness deposes, that the building spoken of is used for public worship, and also for a Sabbath School. A room up stairs is occupied by the sexton of the church. The room down stairs is open twice a week for public worship, and almost every evening in the week, (Sundays excepted,) it is open for business appertaining to the church. The public worship to which he refers, is prayer-meeting one night in the week, preaching another night. The class-meetings are held there through the day, nearly every day. The building is never open for public worship when the church is open. The attendance in this building is fewer than in the church. The prayer-meetings and preaching in this building are open acts of worship, and parts of the religious services of the *Methodist Protestant Church.*

The cause was then removed to the Court of Chancery, and submitted upon motion to dissolve the injunction. The Chancellor (JOHNSON) on the 29th July, 1847, dissolved the injunction, and delivered the following opinion :—

The bill in this case was filed on the equity side of *Bal-*

396    CASES IN THE COURT OF APPEALS

The Methodist P. Church *vs.* Mayor and C. C. of Baltimore.—1848.

*timore* County Court, and subsequently transferred to this court, under the provisions of the act of Assembly for that purpose.

It seeks to restrain, by injunction, the *Mayor and City Council of Baltimore* and their agents, from proceeding to collect a tax and assessment, which had been imposed upon the property of the complainant, as and for a benefit, which in the judgment of the street commissioners of the city of *Baltimore*, had been conferred upon their property by the widening of *Little Aisquith* street.   The interposition of the court is asked upon the ground, that the commissioners in imposing the tax, have acted in disregard of the acts of Assembly, the ordinances of the *Mayor and City Council* in the premises; and especially in violation of those provisions of the laws and ordinances, which exempt this property of the complainants from taxation.   The injunction was ordered, and after answer filed, the proceedings were transferred to this court, in which the motion to dissolve has been argued by the solicitors of the parties.

The bill alleges, that upon the lot of ground upon which the tax has been assessed, there is erected a building, regularly used as a place of public worship, and it is contended, that such property is, by the laws of this State and the ordinances of the city, exempt from taxation for any purpose.   The answer denies the allegation as to the use of the building, and some proof has been taken in regard to the character of the building, and its use as a place of public worship.   And the answer also insists, that by the ordinances of the city upon the subject of opening and widening streets, an appeal to *Baltimore* City Court is allowed to all persons improperly assessed by the street commissioners, and that in that court, and not here, the case made by the bill is cognizable,—and, therefore, the jurisdiction of the Chancery Court is denied.

The Chancellor concurs in this view of the subject, and for that reason, forbears to express an opinion upon the other questions which have been argued by the counsel.

It was said by the court of Appeals, in the case of *Gott and Wilson vs. Carr*, 6 *Gill & Johns.* 312, that "it is a salutary principle of law, that every person is bound to take care of, and protect his own rights and interests, and to vindicate them in due season, and in the proper place;" and because the complainant in that case did not vindicate his rights in due season, and in the proper place, the interposition of the Chancery Court in his favor was refused.

I think the principle of that case applies to this. The act of 1838, ch. 226, which gives to the corporate authorities of *Baltimore*, to lay out, open and widen streets, &c directs among other things, that they shall have power to provide for granting appeals to *Baltimore* City Court, from the decisions of the commissioners, and to secure to every person interested in such decisions, the trial by jury, on application within a reasonable time. And the 9th sec. of the ordinance of the City, No. 10, of 1841, approved on the 9th March of that year, which is an ordinance for exercising the powers vested in the city by the act of 1838, ch. 226, confers upon persons who may be dissatisfied with the assessment of damages or benefits, which may be made by the commissioners, the right of appeal within a limited and reasonable time, to the judges of *Baltimore* City Court, and gives to the said judges, power to hear and fully examine the subject, and decide thereon, with a provision for summoning a jury, to try any question of fact. And a similar provision in reference to the right of appeal, is made by the 9th sec. of the ordinance, No. 59, of 1846.

The street in question was widened under ordinance, No. 49, of 1846, which directs that the street commissioners shall proceed, in all respects, in the widening of the street, agreeably to the provisions of the ordinance of the 9th March, 1841, and consequently, the right of appeal to the City Court, secured by the latter ordinance, might have been enjoyed by any person conceiving himself aggrieved by the judgment of the commissioners. It seems to me, that the remedy thus provided for the examination and correction, (if erroneous) of

398     CASES IN THE COURT OF APPEALS

The Methodist P. Church *vs.* Mayor and C. C. of Baltimore.—1848.

the proceedings of the commissioners, should have been taken by these complainants, and that they have no right, passing by that remedy, to invoke the extraordinary power of a Court of Chancery, to interpose by way of injunction for their relief. The injunction will consequently be dissolved.

From this order, the complainant appealed to this court.

The cause was argued before Dorsey, C. J., Spence and Martin, J.

T. P. Scott for the appellant, insisted :—

1st. That the ordinance of the 20th April, 1846, and the proceedings of the city commissioners do not show affirmatively, nor does it appear negatively, whether *Little Aisquith* street was to be opened and widened under the act of 1817, on the application of two-thirds of the proprietors of the ground, or under the act of 1838, because of the requirements for public convenience. There is no evidence of any application of proprietors under the act of 1817. It manifestly appears from the terms of the ordinance of the 20th April, 1846, that the public convenience will not be promoted by the proposed change. The city commissioners did not proceed, in conformity with the provisions of the ordinance of the 9th March, 1841, as directed by the ordinance of April, 1846. They did not give sixty days notice, as required by the former ordinance, and assessed the property of the appellant contrary thereto.

2d. That though provision is made under said acts and ordinances for an appeal from the decision of the commissioners, yet the appellant is not thereby precluded from his remedy by injunction; because, it had no actual notice in fact of the assessment complained of, until the attempt was made to enforce it by sale of the property. The whole proceedings of the city commissioners being *coram non-judice*, the appellant was not bound by any mere constructive notice. Though in an action of ejectment, brought by any purchaser of this pro-

perty, the appellant might defend itself at law; yet to avoid circuity of action, needless and expensive litigation, and for more prompt, efficient and adequate justice under the peculiar circumstances of this case, it is entitled to its remedy by injunction.

CAMPBELL and WILSON for the appellee, contended:—

1st. That the notice given by the commissioners was given in conformity with the act of 1838, ch. 226, in its 2d section, and also with the 6th section of the ordinance of 1846, No. 59. That the building assessed is no house for public worship, and if it were, is not exempt from an assessment for benefits.

2d. That the remedy of the party is misconceived, even if the objections above answered were good. The City Court of *Baltimore* being provided for by law to entertain such questions.

DORSEY, C. J., delivered the opinion of this court.

Various grounds have been assigned by the complainant, why the injunction issued in this case, should not have been dissolved. And first, it is insisted, that the ordinance, of the 20th April, 1846, No. 49, for the opening of *Aisquith* street, is invalid, because it is not apparent on its face, whether it was passed in execution of the powers delegated to the *Mayor and City Council of Baltimore*, by the act of 1817, ch. 148, or by the act of 1838, ch. 226. It is not essential to the validity of an ordinance, executing powers conferred by the legislature, that it should state, or indicate, the power in execution, of which the ordinance was passed. If it state no particular power, as its basis, judicial courtesy requires that we should regard it as emanating from that power, which would have warranted its passage. If two such powers exist, it may be imputed to either; in conformity to which its provisions and prerequisites shew, that it has been adopted. If, in these respects, in accordance with both, no incongruity or injustice can result, in regarding it as the offspring of both, or either of

the powers. It is, therefore, no fatal objection to the proceedings of the city commissioners, that they do not, therein distinctly unfold under what act of Assembly, or ordinance their powers were exerted. If sustainable on either, their proceedings cannot be invalidated on that ground, in a court of equity.

The allegation and offer to prove in the bill, that the public welfare or convenience does not require the widening of *Aisquith* street, furnishes no ground for relief, by the interference of a Court of Chancery. By the act of 1838, ch. 226, the determination of that question is exclusively vested in the *Mayor and City Council of Baltimore;* and whether their judgment be right or wrong, is no subject for revision or correction in a court of equity.

The appellant seeks to sustain the injunction issued in its behalf, on the ground, that it " had no actual notice in fact of the assessment complained of, until the attempt was made to enforce such assessment by a sale of its property." If such fact were at all material, it is a sufficient answer to it, to state, that it is unsustained by any proof; and that the bill discloses no such ground for equitable relief; and that for aught appearing therein, it might be true, that the complainant had full knowledge of every proceeding of the city commissioners at the time it occurred: and could, in the mode prescribed by the act of 1838, by an appeal to the City Court of *Baltimore,* have been amply protected and redressed against all the illegality and injustice of which it now complains. But, it is immaterial whether such " actual notice in fact" were given to, or possessed by the complainant or not. By the act of 1838, the legislature have provided the mode, by which all persons are to be notified, whose interests are to be affected by the widening, opening, or straightening of streets in the city of *Baltimore;* and the time during which such notice shall be published in the newspapers. Which being complied with; ignorance thereof, in any owner on whose property benefits have been assessed, is his misfortune or his fault, but can furnish no

ground for relief to him, either on a bill in equity, or an appeal to the City Court.

Before the *Mayor and City Council of Baltimore* could proceed to execute the powers vested in them by the act of 1838, at least sixty days notice must be given of any application, which may be made for the passage of any ordinance, by advertisement, in at least two of the daily newspapers in the city of *Baltimore*. And "before any commissioners, appointed by any ordinance to be passed in virtue of this act, shall proceed to the performance of their duty, they shall give notice in at least two of the daily newspapers in the city of *Baltimore*, of the subject of the ordinance, under which they propose to act, at least thirty days before the time of their first meeting, to execute the same." *And it is further enacted,* "That upon the return of any assessment to be made under any ordinance, to be passed in virtue of this act, the register of the city of *Baltimore*, shall cause a copy of said assessment to be published for thirty days, in at least two of the daily newspapers of said city." It is not pretended that all these publications have not been regularly made pursuant to the provisions of the act of Assembly. Against the validity of such proceedings, a want of notice in point of fact can form no objection. The law imputes notice, and will not admit testimony to disprove it, in a case like the present. The time for an appeal from any such assessment, is thirty days after the register's publication.

The ordinance of 9th March, 1841, No. 10, sec. 6, requires sixty days previous notice of the meeting of the commissioners to discharge their duties, to be published in at least two daily newspapers of the city of *Baltimore:* whereas, the act of 1838, in virtue of which that ordinance was passed, required the publication of such notice for but thirty days. Without deeming it necessary to inquire, whether the commissioners have not legally executed their powers, by giving the notices specified in the act of Assembly, it may be sufficient to say, that this objection, as to the time during which the notice was given, is, of itself, of a purely legal or technical

character; and it not being even pretended, that the complainant was damnified thereby, it forms not the slightest ground for equitable relief; much less for the interposition of a court of equity, by way of injunction. A Court of Chancery, except when acting as an appellate tribunal, never interferes to arrest or set aside the proceedings of courts of law, or other judicial tribunals, upon the ground of legal error therein, unless prompted by conscience to prevent wrong and injustice; but leaves the party complainant to his redress in a court of law.

As an authority that an appellant having failed to avail himself of the means provided by law for the redress of the wrong of which he complains, (the means in this case being an appeal to the City Court,) is without remedy in a Court of Chancery. See the case of *Gott & Wilson vs. Carr*, 6 *G. & J.* 312.

Another, and it is conceived, a conclusive objection to the injunction issued in this case, is, that by the 9th section of the ordinance of March 9th, 1841, No. 10, and of May 15th, 1846, No. 59, on an appeal from the proceedings of the commissioners, the City Court are authorized, after an examination into the same, in the mode therein pointed out, to amend or supply all defects and omissions in the return and proceedings of the commissioners, " and alter, modify and correct the said record of proceedings in all, or any of its parts," as it " shall deem just and proper." To the Court of Chancery or County Court, sitting as a court of equity, no such power is delegated; nor can it be lawfully or judiciously exercised by those tribunals. To persons aggrieved by the proceedings of the commissioners in cases like the present, the legislative enactments upon the subject have provided the tribunal and means of redress, and there only can it be successfully sought.

To sustain a court of equity, in the exercise of the power it has assumed, would, in effect, be conferring upon it appellate authority, where it is wholly incompetent to administer justice and render full and adequate relief to all concerned; on whose rights, if it act at all, it ought to abjudicate. There is no

time prescribed within which such an application must be made. A complainant may wait until the proceedings of the commissioners are, in part, or wholly, except as to himself, executed by the widening, opening, or straightening the street, and then apply for relief to a court of equity. To tolerate such an interference, as the present, would produce endless confusion and difficulty; and would be wholly inconsistent with, and subversive of the policy and design of the acts of Assembly, and ordinances of the *Mayor and City Council of Baltimore,* in relation to the widening, opening and straightening of streets, and would render, almost impracticable, if not annihilate the exercise of such a power.

But if it were conceded, that the case stated by the bill, warranted the issuing of the injunction, it was rightly dissolved by the Chancellor. The allegation that the property, charged with the assessment for benefits, was a house for public worship, was responsively and positively denied by the answer; and to disprove and overrule such denial, the testimony of but one witness was offered; which was clearly insufficient for that purpose.

Whether the testimony of that witness, unaffected by the answer, shewed the house in question, to be such a house for public worship as was included in the exemption contained in the ordinances referred to, it is deemed unnecessary to consider.

The order of the Chancellor dissolving the injunction in this case is affirmed with costs; and the bill of complaint of the appellant, is dismissed with costs, both in this court and the court below.

DECREE AFFIRMED.