HENRY R. HAZLEHURST, and others *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE, and others.

*Power of the City of Baltimore to Condemn the Right of Wharfage on a Street—Construction of Acts of 1796, chap. 45, 1801, chap. 92, and 1805, chap. 84, and of Ordinance of 1869, No. 7, of Baltimore City—Jurisdiction of Equity where the Street Commissioners of Baltimore assess Excessive Damages or proceed irregularly.*

The Acts of 1796, chapter 45, 1801, chapter 92, and 1805, chapter 84, authorized the owners of lots binding on Light street, in Baltimoee, to extend wharves into the basin to a certain line, and provided that sixty feet "of said wharves when so made out and extended at the end thereof, parallel with the line of Forest street, shall be deemed, taken and considered as a public highway forever thereafter, reserving nevertheless to the proprietors of said wharves the benefit and advantage of the wharfage thereof, under the limitations aforesaid." The Ordinance of 1826, chapter 12, section 3, declared that it should not be lawful to encroach upon these wharves with any article landed thereon further than eighteen feet, measuring from the inner edge of the logs or stones of which they are formed; but it did not appear that this Ordinance was ever enforced. By the Ordinance of 1869, No. 7, of the City Council of Baltimore, the Street Commissioners were directed "to condemn and widen all that part of Light street between Pratt and Lee streets: the said widening to be made twenty feet eastwardly from the eastern side of said street." The powers and duties of the Street Commissioners are defined in the Ordinance of 1866, chapter 26, the 17th section of which provides that they shall be allowed ninety days to complete any proceedings commenced by them under that, or any future, Ordinance; and, if they cannot so complete the same, they shall report the fact to the Mayor and City Council, and shall suspend all further proceedings until otherwise directed. On a bill for an injunction to restrain the collection of an assessment for the condemnation of the wharfage rights of the proprietors along Light street, made under Ordinance of 1869, No. 7, it was HELD:

1st. That the Acts of 1796, chapter 45, 1801, chapter 92, and 1805, chapter 84, established an incomplete, limited and qualified highway over the wharves, leaving to the proprietors thereof the right to use as much of it as was necessary for the fair and just enjoyment of the privileges granted and reserved to

them by those statutes: and it was competent for the city authorities to condemn the rights still remaining in the proprietors, and to assess the benefits arising from such condemnation on the neighboring proprietors.

2nd. That a Court of Equity will not interfere on the ground that the damages allowed and benefits assessed in the condemnation, were excessive—the remedy of parties objecting on this ground being an appeal.

3rd. That in determining what was the eastern line of Light street in the phrase "the widening to be made twenty feet eastwardly from the eastern side of said street" occurring in the Ordinance of 1869, No. 7, reference must be had to the state of things existing at the passage of the Ordinance, and not to the highway described in the Acts of 1796 and 1805.

4th. That a Court of Equity will not interfere on the ground that the Street Commissioners failed to comply with Ordinance of 1866, chapter 26, section 17, by not completing their work in ninety days, and by completing it afterwards without first obtaining direction from the city authorities—the remedy of parties objecting on this ground being an appeal from the action of the Street Commissioners.

APPEAL from the Circuit Court for Baltimore City.

The facts are given in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and ROBINSON, J.

*E. J. D. Cross* and *George H. Williams*, for the appellants.

No single issue involved in Page's case exists in this, nor any contradiction of what was said in that case is intended in this; in fact, this assumes the absolute correctness of what was therein decided; and while wharfage rights are the subject of condemnation here, they are not condemned, but are continued intact, with practically a cession of fourteen feet to them out of sixty feet, which the State has declared should be and remain, as a whole, sixty feet forever.

The title to the soil covered by navigable water was in the State, and as a free gift from it, the riparian proprietors were permitted to fill out and wharf, and have an

"estate upon condition," viz., that a highway of sixty feet should there exist for the public forever. The made land, wharfage, and the sixty foot highway are all to co-exist, and the sixty foot highway, to its full width, is to exist before any estate or wharfage can arise; and embanking out upon the State's land binds to the performance of this condition precedent.

The only estate the riparian owners can have is a right to moor vessels to the edge of the wharf, and to receive fees for such use, and for the loading and unloading cargoes. Should any space for such purposes be required, then it should have been taken, then sixty feet be laid off, and then they might have erected warehouses on the residue. As it now is, what with the warehouses on the one side and those wharves as so used on the other, that which the State of Maryland declared should be sixty feet forever, has been reduced to only twenty-four feet, to which twenty feet is now to be given graciously out of their own, to a long-suffering, good-natured public, that has endorsed it—the gift being at the expense of adjoining proprietors, enormously assessed to pay for illegal encroachments. 1 *Greenleaf's Cruise*, (2d *Ed.*,) *Tit.* xiii, *ch.* 2, *secs.* 1 *and* 4; *Charles River Bridge Case*, 11 *Peters*, 546.

Embanking out binds to the performance of all conditions. *Atty. Genl. vs. Christ's Hospital*, 3 *Brown's Chy. Rep.*, 165; *Messenger vs. Andrew*, 4 *Russell R.*, 478, (*p.* 165, *mgl.*); 4 *Kent Comm.*, 125; *Spofford vs. Manning*, 6 *Paige*, (*N. Y.*,) 288; 1 *Greenleaf's Cruise*, *Title* xiii, *ch.* 2, *secs.* 15 *and* 16; *Acts of* 1796, *ch.* 45; 1801, *ch.* 92; 1805, *ch.* 84.

Should the existence of a sixty foot highway make nugatory the wharfage right, it must yield to the highway. *Commonwealth vs. Erie R. R. Co.*, 27 *Penna.*, 355.

The highway once having been shown to exist by the dedication as such by the State, any alteration or distinc-

tion of the rights of the public can only be effected by the power which created them. No adverse use can be claimed or set up, and no limitations can avail against the State. *Washb. on Easements*, 156; *Commonwealth vs. Erie and Northeast R. R. Co.*, 27 *Penna.*, 339, 358; *Commonwealth vs. Alburger*, 1 *Wharton*, 469, 486, 487.

No adversary possession avails against the State. *Hall vs. Gittings*, 2 *H. & J.*, 112; *Angell on Limitations, sec.* 37.

Light street having been dedicated in perpetuity by the State as a highway sixty feet wide, the subsequent delegation by the Legislature to the City of Baltimore of the power to regulate streets, &c., within the city limits, was made with reference to and in contemplation of the former Acts  That the widening was intended to be twenty feet on the easternmost side of the street, is the natural and legal interpretation of the Ordinance of 1869. *Foster's Case,* 11 *Coke Rep.,* 63; *Sedgwick on Cons. and Stats.,* 124; *Dwarris on Stats., (Potter's Ed.,)* 117; *Williams vs. Pritchard,* 4 *Term,* 2, 4; *Dugan, et al. vs. Gittings,* 3 *Gill,* 138.

The municipal authorities, as far back as Ordinance, chap. 12, 1826, sec. 3, enacted, "that it shall not be lawful for any person to encroach further on Pratt or Light street wharf, with any article landed thereon, than eighteen feet, measuring from the inner edge of the logs or stone of which the said wharves are formed, nor shall any article not subject to inspection, be permitted to remain on said wharf longer than forty-eight hours, under a penalty of ten dollars for each and every offence," &c. This Ordinance excludes the wharf proprietors from sixteen feet of the twenty feet; for which damages are now claimed, and only contemplates a right of *landing* on the sixteen feet mentioned. This Ordinance is in force to-day, and is embodied in the City Code, Article 22, sec. 42, p. 234.

The provisions of section 17, Ordinance 26, 1866, (p. 838, City Code,) are mandatory, and by occupying more

than ninety days, the action of the Commissioners is null and void, the assessments imposed by them are of no effect, and cannot act as liens on the property of the appellants, which can be enforced by sale.

In all cases of Courts of inferior jurisdiction, boards, commissions, bodies with delegated powers conferred by statute, where the manner of obtaining jurisdiction is prescribed by statute, and in all cases where one may be divested of his estate by proceedings under statute, the mode of proceeding is mandatory, and must be strictly complied with, or the *action* is null and void.

Where, in the exercise of its discretion, the city has prescribed ninety days, the power of Commissioners to occupy longer time is taken away, and they are prohibited from doing any thing further until some other thing is done, to wit: "Report to the Mayor and City Council the causes of such inability, &c.; and suspend all further proceedings until otherwise directed." Any other construction would place the municipal authorities above the laws and above their own laws.

It cannot be said that the assessments made thus are only irregularities, for an assessment made at a time when a board has no right to make the same, and when it has been ordered to stop, is a *nullity*. It cannot impose a lien on, or divest title of, real estate.

The general rule as to whether statutes are "directory" or "mandatory," may be stated from the authorities, that where the words are affirmative merely, and relate to the *manner* power is to be exercised, and not to the limits to power ; such words may be, and often have been, construed directory merely, but negative words, which go to the *power* and *jurisdiction itself,* and which prevent and forbid the exercise of a power at any other time, or in any other manner, can only be construed as *mandatory. Bladen vs. Philadelphia, 60 Penna.,* 464; *State, ex rel. Webster vs. Co. Commissioners of Balt. Co.,* 29 *Md.,* 516,

523; *Commissioners of Public Schools of Allegany Co. vs. County Commissioners,* 20 *Md.,* 449; *Ellicott vs. Levy Court,* 1 *H. & J.,* 360; *Kerr vs. State,* 3 *H. & J.,* 560; *State vs. Merryman,* 7 *H. & J.,* 79; *George Douglass,* 46 *N. Y.,* 42, 44; *Staylor vs. Hallings,* 7 *Indiana,* 144, 147; *Dawson vs. Gill,* 1 *East.,* 62, 70; *Pond vs. Myers,. et al.,* 3 *Mass.,* 230, 231; *Thames Mfg. Co. vs. Lathrop,* 7 *Conn.,* 555.

*Chas. J. M. Gwinn* for Johns Hopkins, one of the appellants.

The Mayor and City Council derived their sole authority to enact the Ordinance of 1869 from the provision of the Code of Pub. Local Laws, Art. 4, sec. 837. The Commissioners for Opening Streets had in their turn no other power to act in the premises, than was conferred by the particular Ordinance under which their proceedings were conducted.

In a word, the Mayor and City Council are not authorized to do any act which the State, acting in the due exercise of its legislative power, has not authorized it to undertake. And the Commissioners for Opening Streets have no power to perform any act which they are not, by Ordinance, specially authorized to do.

But if they depart from that power which the law has vested in them, and assume a power over property not given them by law, then a Court of Equity must treat them, whether they be a corporation or individuals, as persons dealing with property without legal authority. 2 *Joyce on Injunctions,* (*Ed.* 1872,) 1023: *Frewin vs. Lewis,* 4 *Myl. & Craig,* 249, 254, 255.

If such persons, under pretence of an authority, which the law does give them to a certain extent, go beyond the line of their authority, and infringe or violate the rights of others, they become like all other individuals, amenable to a proceeding by injunction. *Frewin vs. Lewis,* 4 *Myl. & Craig,* 250.

The cases of *Holland vs. Mayor & C. C. of Baltimore,* 11 *Md.*, 197 ; *Bouldin vs. Mayor & C. C. of Baltimore,* 15 *Md.*, 18 ; and *Mayor & C. C. of Baltimore vs. Porter,* 18 *Md.*, 301, 302, rest upon these principles.

The bill shows that the Commissioners did not, in point of fact, widen that part of Light street which lies between Pratt and Lee streets, or make said widening twenty feet eastwardly from the eastern side of the said street.

The space of sixty feet, parallel to Light street, was, therefore, by the Act of 1796, amended by the Act of 1805, made a street or highway, subject to the right of the proprietors of the wharves to enjoy the benefit and advantage of the wharfage thereof. Under these Acts the proprietors of lots bounding on the water, in this particular locality, were permitted to wharf out, extend and improve, within certain limits, the whole front of their lots, and it was declared that they should be exclusively entitled to the emoluments arising from the wharfage so made.

This was no recognition of the existing right of these proprietors to that land .then covered by water, upon which the improvements were made. It was, on the contrary, a denial of such right, and an assertion that the right in the soil, so covered by water, then remained in the State. For if the proprietors had any right in the soil, they would not have sought an easement from the Legislature, nor would the Legislature have undertaken to confer such easement. It was, on the contrary, a grant of power to make an improvement upon soil in which the proprietors of the lots bounding on the water, had no property.

It was, in a word, the grant of an incorporeal hereditament; for of this nature such easements always are. *Washburn on Easement,* 2d *Ed.*, 3, 14, 240 ; *Schuylkill Navigation Company vs. Stoever,* 2 *Grant's cases,* 462 ; *Bosley vs. Susquehanna Canal,* 3 *Bland,* 67, 68.

The grant of this incorporeal hereditament did not in fact contract the limits of the highway, dedicated by the Acts of 1796 and 1805. If these Acts made a public highway sixty feet wide, in a qualified sense, it was nevertheless, in this qualified sense still a highway sixty feet wide; for the easement did not in law, abridge the declared width. The Acts themselves show that it was their purpose that the highway and easements should always co-exist.

When, therefore, the Commissioners for Opening Streets were directed to condemn and widen that part of Light street, to which the Ordinance of February 20th, 1869, refers, and were directed to make said widening twenty feet eastwardly from the eastern side of the said street, they had no authority to do otherwise than to make the extension from the eastern line of that street, which had been dedicated by the Act of 1796, and limited by the Act of 1805. The Act of 1805, and the Ordinance of 1869, imperatively defined the beginning line of their work.

It is not pretended that it may not be to the public advantage that such easements should be extinguished. They would be properly extinguished if the Ordinance of February 20th, 1869, was properly construed and applied. Light street might then be in fact widened, and these easements, appurtenant to the property fronting on the water, be wholly extinguished.

The proceedings of the Commissioners for Opening Streets, to which exception was taken by the bill of complaint, were not simply irregular. The law of this case is not, therefore, governed by *Page vs. Mayor and City Council of Baltimore*, 34 *Md.*, 564. For proceedings are deemed irregular, in the sense of the Court of Appeals, where the person so acting had a lawful end in view, but did not comply with the forms prescribed for the execution of the Act which was authorized to be performed. The proceedings taken in this case were, as we

contend, not irregular, but wholly void from the instant
of time at which the Commissioners designated the boun-
daries of Light street, as they would exist after that
street was "widened." They were not "*irregular*,"
because they were not mistaken methods of exercising
a real authority. They were *void*, because they were
wholly beyond the scope of the authority of the Com-
missioners.

*Albert Ritchie* and *I. Nevett Steele*, for the appellees.

The injunction is prayed upon the ground, that Light
street wharf was already a highway, and that, therefore,
there was nothing to condemn.

It seems immaterial to discuss the question of where
the fee simple title to the sixty feet at the end of the
wharfed out property, is to be found. If it be not in the
proprietors of the property which was wharfed out under
the Acts of Assembly, then there is no private title
to any property between Pratt and Lee and Charles and
Light streets. If the argument of complainant below be
worth anything, the title to that entire block is to-day
in the state and subject to patent, for the whole of it was
"wharfed out" under the said Acts, and if there be no
private title in the sixty feet, there is none in any of the
rest. And in that block there would not even be the
rights of wharfage which appertain to the sixty feet.

But, whether the proprietors have a fee, subject to the
easement of a highway or not, is immaterial, because
they, at all events, have "proprietory rights in the
wharves liable to condemnation." *Page vs. Mayor and
City Council of Baltimore,* 34 *Md.,* 568.

If it be of any importance, however, to show it, the fee
simple of the sixty feet did pass out of the State and into
the proprietors who so wharfed out, not only by the true
construction of the Act of 1796, but by the express lan-
guage of the Act of 1745, ch. 9, sec. 10, which provides,

that "all improvements of what kind soever, either
wharves, houses, or other buildings, that have, or *shall
be* made out of the water, or where it usually flows, shall
(as an encouragement to such improvers) be forever
deemed the right, title and inheritance of such improvers,
their heirs and assigns forever.

The Act of 1783, ch. 24, did *not* repeal the Act of 1745,
ch. 9, sec. 10. It simply (in this connection) prohibited
the future construction, extension, etc., of any wharf
without the permission of the Port Wardens. The Acts
of 1796, 1801 and 1805, gave a legislative permission for
the extension in question, and after it was made, the fee
simple vested in the proprietors under the Act of 1745,
even if it did not by the true construction of the Acts
referred to. Such would be the operation of the Act of
1745, ch. 9. *Harrison vs. Sterrett*, 4 *H. & McH.*, 540;
*Giraud's Lessee vs. Hughes*, 1 *G. & J.*, 249; *Dugan vs.
M. & C. C. of Balto.*, 5 *G. & J.*, 357; *Wilson's Lessee vs.
Inloes*, 11 *G. & J.*, 357; *The Wharf case*, 3 *Bl.*, 361;
*Baltimore vs. McKim*, 3 *Bl.*, 453; *Casey's Lessee vs.
Inloes*, 1 *Gill*, 430.

The Act of 1745, ch., 9, sec., 10, vested the fee in the
proprietors of the binding land. The Acts of 1796 and
1801, call those who should extend "the *proprietors* of
the *said wharfs.*" And the Court of Appeals, in Page's
case says, there "are proprietory rights in the wharves
liable to condemnation."

The injunction is again prayed on the alleged ground,
that the Commissioners did not complete their proceed-
ings within ninety days. *City Ords., City Code, sec.*, 17,
*p.* 838.

Grant, *ex gr.* that this provision is mandatory, and
also that it was not complied with. The complainant
nevertheless, has no remedy in Equity.

Where an Ordinance altogether *void* is about to be en-
forced, Equity may restrain by injunction, but where

the ordinance is valid, and there is simply some irregularity, fault, or defect, in the execution of its provisions, the remedy is on appeal by a motion to amend or quash. *Page's case,* 34 *Md.*, 558; *Alexander, et al. vs. M. & C. C.,* 5 *Gill,* 383; *M. P. Church vs. M. & C. C.,* 6 *Gill,* 391; *Richardson vs. M. & C. C.,* 8 *Gill,* 433; *Mayor and C. C. vs. Bouldin,* 23 *Md.,* 330; *Mayor & C. C. vs. Porter,* 18 *Md.,* 301; *Mayor, &c., of Balto. vs. Eschbach,* 18 *Md.,* 281; *People vs. Whiteside,* 23 *Wend.,* 277; *Williamson vs. Carnan,* 1 *G. & J.,* 212; *Baltimore City Code, sec.* 9, *pp.* 834-5.

The Acts of Assembly provide that before the Mayor and City Council shall pass any ordinance, (for opening, widening, etc., of streets) at least sixty days notice shall be given of the application, &c. *See City Code, sec.* 2, *p.* 822.

In Page's case, the alleged violation of this law was assigned as a reason in the motion to quash. The Court of Appeals clearly intimates that such was the proper proceeding, though it holds there is no evidence of the failure.

It would certainly seem, that, if the violation of the Act of Assembly, in a provision precedent to the passage of the ordinance, on account of which the ordinance itself is assailable, be properly reached by a motion to quash on appeal, the failure of the servants of the City to strictly comply with the directions prescribed by an unimpeached ordinance, might properly be reached in the same way. If it could be, then equity has no jurisdiction; and even if it had, it would not be exercised in behalf of a party who by his own laches, had lost the opportunity of going into the proper Court.

But, grant, *ex. gr.* that this section 17 is mandatory, that it was violated, and that equity would have jurisdiction. Still it would not issue an injunction at the suit of this complainant, because he can show no injury

from the thing complained of. *People vs. Mayor, &c.,* 2 *Hill,* 9; *Lunt vs. Hunter,* 16 *Me.,* 9; *Page's case,* 564.

The party complaining must be one "whose interests are to be injuriously affected thereby." (*Page's case,* 564.)

Now the act complained of, is the alleged delay of the commissioners; the party complaining is one *assessed for benefits.* The question of whether he *was* benefitted, and the amount of his benefits, were clearly questions for appeal. No appeal having been taken, it is therefore settled that he is benefitted, and in the precise amount assessed. He had ample remedy on these points in the City Court, and asking none there, he is precluded from saying here that he is not benefitted, and in the amount assessed. Not being able to deny that he *ought* to pay these benefits, how is he affected by the act complained of, viz: the alleged delay? He is not injured at all, but actually *benefitted* by having the *time of payment deferred.*

Equity will not favor the application of this complainant, who suffers nothing from the *act complained of,* in order that he may have a second opportunity to raise questions, which he failed to raise when invited to do so, or, in other words, in order that he may be relieved from consequences which he does not complain of, and which he could not set forth in this proceeding if he would.

But the ninety days provision, is merely directory. Whether any provision of a statute be directory or not "must depend upon the sound construction of the nature and object of each regulation, and of public convenience, and apparent legislative intention." *Bank of United States vs. Dandridge,* 12 *Wheaton,* 81.

(*See City Code,* sec. 9, *page* 835, setting forth the powers of the City Court on appeal.) *Sedgwick, on Stat. & Const. Law,* 368; *State vs. Commisssoners of Balto. Co.,* 29 *Md.,* 522; *McPherson vs. Comptroller,* 29 *Md.,* 381.

It can hardly be necessary to notice the point, that the intention of the ordinance was to establish twenty feet of highway east of the sixty feet, through the water, that its object was to open a street twenty feet wide in *front* of the whole of Light Street wharf. Such a view ignores the whole of Page's case. With the ordinance, the proceedings of the Commissioners and the maps of the Surveyor before them, all showing the sixty feet in question, and the twenty feet in question, and that the twenty feet was part of the sixty feet, the counsel argued and the Court decided Page's case, as if the twenty feet were embraced within the sixty feet, and it cannot now be well said, that the twenty feet in question are not where counsel and Court supposed them to be, but are outside of the sixty feet in the water.

MILLER, J., delivered the opinion of the Court.

This bill prays for an injunction to restrain the Mayor and City Council of Baltimore, and the City Collector from proceeding to collect certain benefits and assessments imposed upon the property of the complainants, for the widening of Light Street under City Ordinance No. 7, of 1869. The first section of that Ordinance, authorizes and directs the Street Commissioners "to condemn and widen all that part of Light Street, between Pratt and Lee Streets; the said widening to be made twenty feet eastwardly, from the eastern side of said street." According to our reading of the bill and understanding of the arguments of the appellants' counsel, the grounds upon which the validity of this Ordinance and the proceedings themselves are assailed, and upon which the injunction is asked, are in substance these:

1st. That the twenty feet taken for this supposed widening are part of the public highway of sixty feet, established by the Acts of 1796, ch. 45, 1801, ch. 92, and 1805, ch. 84, and that it is beyond the scope of

municipal power, either to abridge or condemn, and dedicate anew any part of the public highway, thus irrevocably made such by authority of the State itself, and over its own property.

2nd. That by the plain meaning of the Ordinance, the widening must be made from the eastern edge of the highway, as established by these Acts of the Legislature, that is to say, twenty feet into the water, eastwardly from the present water edge of the Light Street wharves, and that the Commissioners by adopting an erroneous line of commencement, have acted outside of the authority conferred by the Ordinance.

3rd. That the proceedings under this special Ordinance, are null and void, because the Commissioners did not complete the exercise of their powers and duties thereunder within sixty days, as prescribed by general Ordinance, No. 26, sec. 17, of 1866.

1st. We are unable to distinguish the first ground of objection from that stated in the fifth reason for quashing the proceedings, which was overruled by this Court in *Page's case*, 34 *Md.*, 558. The objection then made and urged was, that Light Street wharf, from Pratt to Lee Streets, for many years prior to the passage of this Ordinance, had been and still is a public highway, having been condemned as such by the Acts of 1796 and 1805. In that case, the several Acts of Assembly bearing upon the subject, the Ordinance of 1826, ch. 12, sec. 3, and the damage plat showing what part of the locality had been used exclusively as a street, and what for the purpose of wharves only, before and at the time the Ordinance of 1869 was passed, were before the Court and pressed upon its attention. Elaborate arguments were made by counsel upon the construction and effect of these laws, and the question not unattended with difficulty, was carefully considered by the Court. Its judgment, with the reasons therefor, adverse to the objection, and

sustaining in this respect the validity of the Ordinance, was deliberately formed and pronounced. The only additional matter contained in this record is proof by ancient plats, and oral testimony, as to the relative position of the land and water in 1796 and 1805, when these laws were passed. That however furnishes but little if any aid, in determining the true construction of this legislation, and the conflicting rights of wharfage and public highway thereby created. The only useful inference deducible from it, is that the filling up and wharfing out contemplated and authorized by these laws, was a work of considerable magnitude, and must have been attended with great expense to the riparian owners and improvers.

The argument for the complainants more fully presented, perhaps, in this than in the former case, is that the title to the soil covered by navigable water was in the State, and by these laws and as a free gift from it, the riparian proprietors were permitted to fill out and wharf and have "an estate upon condition," viz: that a highway of sixty feet should there exist for the public forever; that the made-land, wharfage, and highway of sixty feet are all to co-exist; that the highway to its full width is to exist before any estate or wharfage can arise, and that embanking out on the State's lands binds to the performance of this condition precedent: that the only estate the riparian owners can have is a right to moor vessels to the edge of the wharves, and to receive fees for such use and for the loading and unloading of cargoes: that should any space for such purpose be required it should have been taken, then the sixty feet laid off, and then warehouses might have been erected on the residue : and even should the existence of a highway of sixty feet make nugatory the wharfage right, it must yield to the highway. But in our judgment the doctrine of estates upon condition, and the rule of strict construction most wisely

applied by the Courts to grants of franchises to private corporations, can find no application here.   These laws belong to a different class of legislation, and the rights conferred by them are to be ascertained from the language used, the obvious purpose of the Legislature expressed upon their face, and the end plainly designed to be accomplished.   Long prior to the first of these enactments, the Legislature by the Act of 1745, ch. 9, sec. 10, supplemental to other Acts erecting Baltimore Town, had declared that all improvements of what kind soever, either wharves, houses, or other buildings that have been or shall be made out of the water or where it usually flows, shall, *as an encouragement to such improvers,* be forever deemed the right, title and inheritance of such improvers, their heirs and assigns forever.   The Act of 1796 was passed, as its preamble shows, upon petition of a number of inhabitants of Baltimore Town, setting forth that for want of convenient wharves at the west end of said town, that part of said town is deprived of many advantages it would otherwise enjoy, and in consideration of the representation thus made it was enacted by the second section, "that each and every of the proprietors of lots binding on and entitled to the privileges of the water, at the west end of Baltimore Town, between Pratt street and Forest street, shall be and are hereby permitted to wharf out, extend and improve the whole front of their several lots respectively, and for such distance as from time to time they may deem fit, until they intersect the east side of a line drawn from the east side of Light street to the east side of Forest street, provided the whole front of each proprietor's lot be extended, and no dock or vacant space left on part thereof."   The third section then declares, "that the *proprietors of said wharves* shall be entitled solely and exclusively to the *emoluments arising from the wharfage thereof,* provided always that the proprietor or proprietors of said lots in making out and extending the

same, shall be subject to the rules, regulations and ordinances of the Board 'of Wardens, or other constituted authority of Baltimore Town, respecting the manner the said wharves shall be extended, and also for the regulation of the wharfage thereof; and provided also, that eighty feet of the said wharves, when so made out and .extended, *at the end thereof* parallel with the line of Forest street, shall be deemed, taken and considered as a public highway forever thereafter, *reserving, nevertheless,* to the proprietors of said wharves the benefit and advantage of the wharfage thereof under the limitations aforesaid." The Act of 1801 limits the highway to sixty feet with the same reservation of wharfage. In 1805 another petition was presented to the General Assembly, stating that some of the proprietors had made the improvements, and that but a small part of the work remained to be done. The Legislature thereupon passed an Act *making it the duty* of the proprietors who had not extended their lots, to do so within two years, and if they made default, the city was authorized to complete the work within one year thereafter, and if the latter neglected or refused, then it was made lawful for any individual who should first signify his intention so to do, to make the improvement. This Act also contains a section respecting wharfage and the highway of sixty feet, to the same effect and in almost the identical language of the Act of 1796.

From a careful consideration of these statutes, it is apparent to our minds, the main purpose the Legislature had in view, and the improvements they deemed important, was not the making of a public highway, but the construction and erection of wharves to accommodate and promote the commerce and trade of the city. And in order that this might be done without direct charge to the State or city, the Legislature encouraged and induced private owners of water-lots to fill out and build the wharves at their own cost and expense, by an express

grant and reservation to them of wharfage rights and privileges. The work having been thus undertaken and completed by private individuals at their own expense, upon the faith of this grant and reservation, no narrow construction should be placed upon it as against them and in favor of the highway. The terms as well as the purpose of the statute forbid it. For it not only designates these improvers as *"proprietors of the wharves,"* and makes an express and exclusive grant to them of "the emoluments arising from the wharfage," but in the clause establishing the highway there is a careful reservation "to the proprietors of the wharves of the *benefit and advantage* of the wharfage thereof." Thus the very proviso which creates the highway qualifies it by the reservation of these rights. The highway thus established cannot make nugatory the wharfage right; if either is paramount, and if conflict arises between them, it is the former and not the latter which is subordinate, and must give way. Again, these statutes do not permit the filling out to be extended beyond the designated line, and the sixty feet of highway is made to extend to the same line. Under these laws no space could be filled up or wharves constructed eastwardly beyond the sixty feet, and therefore any use of these wharves as authorized to be built for the purpose of loading or unloading cargoes, would necessarily obstruct and interfere with some part of these sixty feet, so as to prevent it from being an unqualified highway. This clearly shows it could not have been the design of this legislation to make, and that it did not in fact make, a complete and absolute highway throughout the whole limit of these sixty feet, but that for a part at least of this extent it was to be, and in truth is, "incomplete, qualified and limited," as was said in *Page's case.*

How much then of this space have these proprietors the right to use and occupy for wharfage purposes? We

know of no better answer to be given to this question than to say, they have the right to use as much of it as is necessary for the fair and just enjoyment of the privileges granted and reserved to them by these statutes. These privileges, defined by the law to be "emoluments arising from," and "the benefit and advantage of, wharfage," are not confined to the mere right to moor vessels to the edges of the wharves and receive fees for such use of them, but extend to the use of the wharves for such space and time as may be necessary for the purpose of loading and unloading from vessels, cargoes of every kind and description, and for receiving and protecting the same for a reasonable time, before and after, as well as while in the course of being loaded and unloaded. The damage plat offered in evidence, shows that these proprietors have used and are now using these wharves, and interfering with the highway in a greater or less degree, for a space extending from their edges to and over the twenty feet condemned by this Ordinance. Assuming this to be necessary to the just and reasonable enjoyment of their privileges, their right to such use is valuable, and can only be extinguished for the purpose of an unqualified highway or street, by an Ordinance of this character. We cannot determine the contrary from anything appearing in this case, if indeed such a question could be raised in a proceeding like the present. What would constitute an unwarrantable use by them of any portion of this space, or what would be an unauthorized abridgment of this highway by the erection of improper buildings or obstructions on these wharves, or whether any such have been or are now placed thereon, are questions which we have no power to adjudicate under this bill. What we are asked to do now, (and that is the foundation of the jurisdiction of a Court of Equity to grant the relief prayed for,) is to declare this Ordinance totally null and void, and we can do that only upon the ground, that the right of highway

in the entire twenty feet of widening which it directs to be made, is absolute, unqualified and paramount, and irrevocably made so by these statutes. Our opinion upon that question has been sufficiently expressed. The Ordinance of 1826, ch. 12, sec. 3, declared it should not be lawful to encroach upon these wharves with any article landed thereon further than eighteen feet, measuring from the inner edge of the logs or stones of which they are formed. Even this would allow an encroachment upon part of the twenty feet now condemned, but it does not appear this Ordinance was ever enforced, and in our opinion it could not have been enforced against the wharf proprietors, *in restriction* of the enjoyment of their privileges to the extent and in the manner before stated. Whether the fee in these sixty feet remained in the State, or passed, by the laws to which we have referred, to the improvers, is a question more difficult than important now to be determined; for if it be conceded to remain in the State, that fact could in no wise limit or affect the wharfage rights we have been considering. They exist by force and effect of the grants and reservations contained in the statutes themselves, no matter where the fee in the land may remain. It results from these views that we cannot determine that the Ordinance in question is not a valid exercise of the power conferred upon the city authorities, to open and widen streets, because there are no proper subjects of condemnation for that purpose upon which it can operate. The first ground of objection to it therefore cannot be sustained.

With respect to what is alleged in the bill, and has been said in argument as to the amount of damages allowed for this condemnation, and the corresponding heavy assessments for benefits, it is hardly necessary to say that this Court under this proceeding, has no power to administer relief for such grievances. The law has provided other modes for their redress, and if

the complainants have neglected to pursue or have unsuccessfully pursued them, it is a misfortune which cannot be made a substantive ground of relief by a bill in Equity.

2d. What has already been said, enables us to dispose of the second objection in a few words. The Ordinance of 1869 was passed with reference to the state of things then existing, and it must be thereby construed and applied. It cannot be referred to the highway mentioned, and described in the Acts of 1796 and 1805. If therefore, the commissioners in applying the Ordinance to existing state of things found, as it appears they did, that but twenty-six feet from the western side of Light street had been paved and used exclusively as a public street, and that the remainder of the sixty feet were held and used by the wharf proprietors, they were entirely right in assuming the eastern edge of these twenty-six feet, as the eastern side of said street, and making this the line from which the twenty feet of widening eastwardly was to be made.

3d. The third objection is of a different character. It does not assail the validity of the Ordinance of 1869 upon any ground. It concedes that the Mayor and City Council had power and jurisdiction to pass it, and that the commissioners did that which it authorized and directed to be done. Conceding this, the objection attacks the validity and regularity of the proceedings of the commissioners, because they failed to observe one of the directions or requirements of the Ordinance of 1866, ch. 26. This latter Ordinance provides for the appointment of Street Commissioners, defines their powers, prescribes their duties, and directs the mode of procedure to be observed by them; and among these is the provision of sect. 17, that they shall be allowed ninety days to complete any proceedings commenced by them under that or any future Ordinance, and if they cannot so complete the

same, they shall report the fact to the Mayor and City Council, and shall suspend all further proceedings until otherwise directed. Failure to observe this direction or requirement, constitutes the objection now made. Whatever force this objection might have had if presented at the proper time and in the proper *forum*, we are clearly of opinion it furnishes no ground for the interference of a Court of Equity. Objections like this may be taken advantage of upon the appeal provided by law from the action of the Street Commissioners. Failure to complete their work within ninety days and completing it afterwards without first obtaining direction so to do from the City authorities, is a defect, if one at all, of the same character as failure to take the prescribed oath or to give the required notice before proceeding to act. It was decided in *Page's Case*, upon a careful review of the authorities that such objections could be availed of by motion to quash the proceedings on appeal to the City Court by a party, deeming himself aggrieved by the assessment of damages. The Court in that case said "there is no doubt that where an Ordinance *is void* and its provisions are about to be enforced, any party whose interests are to be injuriously affected thereby, may and properly ought to go into a Court of Equity and have the execution of the Ordinance stayed by injunction." This proposition was supported by reference to cases where execution of Ordinances was enjoined by a Court of Equity, because the municipal authorities had, or had acquired, no jurisdiction or authority to pass them. But it was also there decided that where an appeal is given by law to the parties to be affected by the action of Street Commissioners, any objections going merely to the legality and regularity of their proceedings, are open for review on that appeal, and redress on such grounds *must be sought in that mode only*. The authorities there cited not only sustain this position, but also the further and familiar

one, that a party who fails or neglects to avail himself of the means provided by law for redress of the wrong of which he complains, is without remedy in a Court of Equity. 6 *Gill*, 402 ; 6 *G. & J.*, 312.

*Decree affirmed.*

(Decided 20th December, 1872.)