## G. BLAINE GIESSMAN *v.* COUNTY COMMISSIONERS OF GARRETT COUNTY

[No. 30, October Term, 1945.]

352

*Decided December 6, 1945.*

The cause was argued before MARBURY, C. J. DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Charles G. Watson, George D. Hicks,* and *William J. McWilliams* for the appellant.

*E. Ray Jones* and *Robert H. McCauley* for the appellees.

MARKELL, J., delivered the opinion of the Court.

This is an appeal by the plaintiff from a judgment for the defendant on plaintiff's refusal to plead further after a demurrer to his replication was sustained.

Suit was brought on the common counts in assumpsit, which were later limited by a bill of particulars. The declaration, thus limited, alleges in substance that: When George Giessman, plaintiff's father, was Treasurer of Garrett County, the County Commissioners issued 109 orders, some in 1918, some in 1919, to creditors of the County for sums to be paid by the Treasurer. These orders were never presented to "Giessman as Treasurer to pay, but were taken direct to the bank and paid from the funds of the said Giessman," and the Commissioners refused to allow any credit for said orders, although marked paid by the bank. The 109 orders, listed by name, number, amount, "levy" and year (1918 or 1919), aggregate $11,667.05. "The General Assembly passed a bill in 1939, ordering bills of this character paid with interest. In conformity with said Act, about December, 1942, the Commissioners issued three orders," for amounts aggregating $11,667.05, for the principal, and one for $15,575.45 for the payment of the interest. George Giessman owed plaintiff "a large sum of money and to pay same transferred the original orders to the plaintiff."

To the declaration, as particularized, the defendant filed five pleas. The first two are the general issue pleas. The third is a plea of limitations, "that the alleged claim of the plaintiff did not accrue within three years before the bringing of this action." The fourth is a plea of *res adjudicata*, that "in No. 44 Trials, June Term, 1927, of this Court," in a suit between the State of Maryland, for the use of the County Commissioners of Garrett County, plaintiff, and George Giessman and Maryland Casualty Company, defendants, the equitable plaintiff therein, "the defendant in this action," obtained a judgment against Giessman and Maryland Casualty Company in the

amount of $5,303.55; in the trial of that case "all claims and counterclaims then existing between the plaintiff and the defendants, including claim for the orders referred to and listed in the plaintiff's amended bill of particulars, were presented to and passed upon by this Court and fully and finally adjudicated; said judgment was rendered on the same cause of action mentioned in the plaintiff's declaration and amended bill of particulars and remained a subsisting judgment" until paid by Maryland Casualty Company, and barred against Giessman by adjudication in bankruptcy upon his petition.

The fifth plea is a plea "for defense on equitable grounds." This plea alleges that the county orders for $11,667.05, "alleged to have been drawn against the levies of 1918-1919," were issued prior to Giessman's term of office, and were not drawn against funds for which he was responsible; during his term of office, other orders, in the amount of $12,088.88, were issued by the County Commissioners, drawn against funds over which he had control, and delivered to him for the purpose of taking up orders such as those for $11,667.05; Giessman was not chargeable with the orders for $11,667.05 and was not at any time charged with the amount thereof, but was charged with those for $12,088.88, and at the time of the trial of "the case brought against the bond" of Giessman, No. 44 Trials, June Term, 1927, "as well as in the making of the audit and accounting of said funds, was given full credit for the same, as will appear by reference to the papers and proceedings in said case"; in said case a judgment was rendered against Giessman and the surety on his bond in the amount of $5,303.55, and was later paid by the surety; thereafter, on September 24, 1927, Giessman made application in the district court for Maryland for the benefit of the bankruptcy law and was later adjudicated bankrupt, and "all his assets, claims and demands of whatsoever nature and kind then and there duly vested in the trustees therein appointed," and he ceased to have any interest therein;

in his petition in bankruptcy he did not claim that any sum was due him from Garrett County, although other assets and claims were listed; because of said judgment and said bankruptcy proceeding, there could not have been any valid assignment of the alleged orders by Giessman to the plaintiff, even had said orders been the property of Giessman and the defendant been indebted to him on the same, all of which was well known to the plaintiff; notwithstanding the plaintiff knew said orders constituted no valid claim against the defendant and that defendant was not indebted to him in any manner whatsoever, plaintiff, while serving as a member and as president of defendant corporation, in November, 1942, with the collusion and connivance of one other member and without the knowledge of the third, at a so-called special meeting at which only the two were present, with intent to cheat and defraud defendant, placed upon the minute book of defendant a resolution purporting to recognize said orders, together with interest from 1919, as a valid claim against defendant, and thereafter on December 2d, and 3d, 1942, just before relinquishing his office as a County Commissioner, issued to himself the four county orders mentioned in his bill of particulars, three aggregating $11,667.05, and a fourth, allegedly for interest, in the amount of $15,575.45, one of said orders being drawn against a nonexistent levy and others against levies in which there was not money with which to pay the amount of said orders, and for none of which had there been a levy made as required by law, all of plaintiff's said actions being illegal, fraudulent and in utter disregard of his duty and responsibility as an officer of defendant corporation and with intent to cheat and defraud Garrett County; thereafter plaintiff, well knowing that defendant was not indebted to him for the amounts of said orders and that his action in issuing them was fraudulent and unlawful, has never presented said orders to the County Treasurer for payment as required by law, and defendant is not indebted to plaintiff.

By a "replication," which apparently comprises three replications and a joinder of issue, plaintiff joined issue on the first two pleas, and alleged (a) in reply to the plea of limitations, that plaintiff ought not to be barred, because Chapter 225 of the Acts of 1939 "gave full force to the orders sued on in.this case"; the County Commissioners "recognized the validity and justice of said orders by passing four orders for the payment of the claim sued for in this case, as [was] their duty so to do, and could have been compelled to do so by mandamus," but the Treasurer of the County "illegally refused to pay same"; (b) that the plea of *res adjudicata* is not available, for at the trial referred to "the defendant did not know such orders were in existence, had no possible means of knowing, [but] the [equitable plaintiff] did know it had issued them, but dishonestly and knowingly suppressed them"; (c) "that the plea of bankruptcy has no part in this case and can in no way be any benefit to defendant, the State of Maryland has ordered these orders paid with interest. At the time of bankruptcy, the bankrupt did not know that the orders were in existence, and the orders were more than six years old and [were] not such a claim that the trustee could have sued upon and [were] a non-collectible claim until revived in 1939, and then became due to the legal holder of them on the passage of the said Act."

The amended bill of particulars was filed April 15, 1944. On April 22, 1944, on a petition of defendant, the Court ordered that "the time for filing of pleas to the declaration, or such other action as may be decided upon, is hereby extended to the 23rd day of May, 1944." On May 23, 1944, the pleas were filed. In September, 1944, the case was removed from Garrett to Washington County. On December 1, 1944, the replication was filed. On December 4, 1944, defendant filed a demurrer to the replication. On December 14, 1944, plaintiff made a "motion in open court that plea of limitations be stricken from record"; defendant objected "because motion was not timely made." On December 14, 1944, by

leave of Court defendant filed an "additional or sixth" plea, of set-off, with a bill of particulars, showing amounts "received by plaintiff from defendant on excessive and improper expense accounts filed," aggregating $510.53, and "unearned salary for December, 1942, drawn in advance and not refunded," $75. On March 26, 1945, the Court's opinion was filed, and in accordance therewith the motion that the plea of limitations be stricken from the record was "overruled and denied," and the demurrer to the replication was sustained, "with leave to the plaintiff to plead further within fifteen days." On April 26, 1945, "the plaintiff appeared in open courrt by attorney and refused to further plead," and judgment was entered by order of Court in favor of the defendant.

The record does not contain the Garrett County rules of Court. In the appellee's brief it is stated that Rule 6 is: "Pleas to the jurisdiction, in abatement and of limitations must be pleaded by the rule day unless further time to plead such pleas shall have been given by the Court." The next "return day" after April 15, 1944, was the second Monday in May, *viz.*, May 8, 1944, P. L. L. (1930), Art. 12, Sec. 51.

A demurrer admits facts well pleaded. It does not admit matters that are impossible, or conclusions of the pleader, or matters of law, *e.g.*, the construction of a statute. *Poe on Pleading*, Tiffany Ed., Sec. 705; *Dillon v. Barnard*, 21 Wall. 430, 437, 22 L. Ed. 673; *United States v. Ames*, 99 U. S. 35, 45-46, 25 L. Ed., 295.

As the demurrer to the replication mounts to the first error in pleading, it presents the question of the sufficiency of the declaration, as particularized. Perhaps the declaration should be held insufficient for lack of any averment showing that plaintiff is *bona fide* entitled to his claim "by assignment in writing signed by the person authorized to make the same." Code, 1939, Art. 8, Sec. 1; *Tradesmen's National Bank v. Green*, 57 Md. 602. As such an omission could readily have been corrected by amendment, we shall assume, without deciding, that

such an assignment in writing is implied in the allegation that the father "transferred" the original orders to plaintiff.

The gist of plaintiff's claim may be shortly stated. In a word, plaintiff, as his father's assignee, sues to recover, with interest, $11,667.05, paid by the father for defendant and not repaid or credited to the father by defendant.

The form of the "orders" of the County Commissioners is not set out in the pleadings. Nor is it prescribed by statute. Before 1939 there seems to have been no express statutory provision for such instruments in Garrett County. In other counties, long before 1939, statutory provision was made for payments by County Treasurers or Tax Collectors on "orders" (*e.g.*, Baltimore County, Acts of 1876, Ch. 179; P. L. L. [1930], Art. 3, Sec. 166), "drafts" (Allegany County, Acts of 1910, Ch. 45, P. L. L., Art. 1, Sec. 106) or "orders or warrants" (Washington County, Acts of 1878, Ch. 3; P. L. L., Art. 22, Sec. 153) of the County Commissioners. No doubt, in Garrett County and other counties, "orders" or "warrants" were long used without express statutory authority. *Dillon on Municipal Corporations*, 5th Ed., Sec. 851; *McQuillin on Municipal Corporations*, 2d Ed., Revised, Sec. 2401. "A municipal warrant or order is an instrument generally in the form of a bill of exchange or order drawn by an officer of a municipality upon its treasurer, directing him to pay an amount of money specified to the person named, or his order, or bearer." *McQuillin, ibid.*, Sec. 4200. Such instruments are not negotiable, but are subject to all the equities existing or attached to the original transactions. *Ibid.; Dillon, ibid.*, Sec. 856; *Wall v. Monroe County*, 103 U. S. 74, 26 L. Ed. 430. *Cf. Tradesmen's National Bank v. Green, supra.* They are "vouchers for moneys due" and, in a sense, "certificates of indebtedness." *Dillon, ibid.*, Sec. 850. But a prohibition of issuance of "any form of certificate of indebtedness" may be coupled with a requirement that "all claims shall be paid by warrant issued against

some specified fund otherwise unappropriated." P. L. L., Art. 17, Sec. 326; Act of 1900, Ch. 140; Prince George's County.

In Garrett County in 1890 it was provided that the treasurer "shall exhibit his vouchers for his disbursements, which vouchers after cancellation shall be retained by said treasurer" (Acts of 1890, Ch. 566, Sec. 47; P. L. L., Art. 12, Sec. 104), and the money received and deposited by the treasurer shall be drawn only by the treasurer and "only for claims which may have been levied and ordered paid by the county commissioners." Acts of 1890, Ch. 566, Sec. 48; P. L. L., Art. 12, Sec. 105; Acts of 1935, Ch. 534. In 1939 "vouchers" was changed to "vouchers and orders"; in Section 83 of Article 12 it was provided that the County Commissioners "shall pay all bills by orders made payable to whomever due, and said orders shall be delivered directly to the Treasurer by the Clerk to the County Commissioners. The Treasurer shall issue his check as Treasurer to pay such orders, and shall deliver said checks to the payee"; in Section 104 it was made the duty of the Treasurer to issue checks "in payment of orders drawn by the County Commissioners as directed in Section 83, provided said orders are not in excess of the amounts contained in the levy." Acts of 1939, Ch. 286; Art. 12, Sections 83, 104, 105, Acts of 1941, Ch. 667.

Thus the only statutory provisions for "orders" of the County Commissioners of Garrett County require that they be used as inter-office vouchers only, to be delivered by the Commissioners to the Treasurer, and not as quasi-negotiable certificates of indebtedness, to be delivered to creditors of the County. At the same time (1939), statutory recognition was given to "outstanding orders" issued before December 1, 1938; the Commissioners were directed to pay interest on them. "The County Commissioners of Garrett County are hereby directed to pay interest at the legal rate on all outstanding orders of said Commissioners issued prior to December 1, 1938, from the date of the conversion of such

orders into cash until the date of payment of same by said Commissioners, as funds are available." Acts of 1939, Ch. 225; P. L. L., Art. 12, Sec. 94A. As Judge Mish says: "No doubt the practice of the Commissioners prior to this enactment was to issue orders for the payment of just claims without having in the hands of the Treasurer funds to pay the same and large numbers of these *bona fide* claims were held for lengthy periods of time by persons and institutions and except for the passage of this Act they would not have been entitled to interest on their claims." One effect of the Act was to serve notice that such orders issued after December 1, 1938, would not bear interest. In the future the Commissioners could not properly pay interest on orders, for the double reason that (1) Section 94A excludes payment of interest and (2) Section 83 forbids issuance of orders to creditors at all.

In the light of the facts, including pertinent statutory provisions, the explanation in plaintiff's pleadings, of how his father's claim originated, is unintelligible. Averment that the original orders were never presented to the Treasurer for payment, but "were taken direct to the bank" and paid from the Treasurer's funds, can only mean that before the Treasurer had funds to pay them, the orders were "cashed," *i.e.*, purchased, by "the bank," which thereby became the original creditors' assignee. When the orders were later "paid" from the Treasurer's funds on deposit with the bank, it made no difference to the Treasurer that they were paid to the bank instead of the original creditors. In either event the "orders" paid were the bank's only vouchers for making payment out of the Treasurer's funds. They likewise became the Treasurer's vouchers for payment out of his County funds. If the bank had made charges against the Treasurer's account without proper vouchers, his remedy against the bank would have been clear. Likewise, if the County had refused to give him credit when he exhibited proper vouchers, his remedy against the County would have been clear. The County could not have kept him

in ignorance of his claim. It is not alleged that his vouchers were lost, destroyed or stolen. The allegation in the replication that at the trial of the suit on the Treasurer's bond in 1927 the Treasurer "did not know such orders were in existence, had no possible means of knowing, [but] the [County] did know that it had issued them, but dishonestly and knowingly suppressed them," is a meaningless conclusion, unsupported by facts and contrary to the only rational inferences to be drawn from the facts alleged.

If, however, this allegation be regarded as an allegation of facts, it is not a sufficient reply to the plea of *res adjudicata*. The plea of *res adjudicata* is good in form and in substance. Code, Art. 75, Sec. 28, Subsec. (54) ; *Poe on Pleading*, Tiffany Ed., Sec. 665. It is manifestly true that the judgment in the suit on the Treasurer's bond "was rendered on the same cause of action mentioned in the plaintiff's declaration," *viz.*, on "all claims and counterclaims then existing" between the Treasurer and the County. Since in the former suit it was finally adjudged that $5,305.55 was due and owing from the Treasurer to the County, it cannot now be adjudged that $11,667.05 was then due and owing to the Treasurer from the County. "It is conceded that in the former suit a judgment was obtained, and that it is now a subsisting judgment. In that judgment the cause of action was merged and could only have been revived by apt proceedings, terminating in striking the judgment from the record in the Court of original jurisdiction, or by its reversal on appeal." *Walsh v. Canal Co.*, 59 Md. 423, 428.

The plea of limitations is also good. The replication, that (*i*) Chapter 225 of the Acts of 1939, *supra*, "gave full force to the orders sued on in this case" and (*ii*) the County Commissioners " recognized the validity and justice of the said orders by passing four orders for the payment of the claim sued for in this case" in 1942, is insufficient. This case purports to be, not a "suit on" the original orders, as "outstanding orders," but a suit for reimbursement for payment and retirement of those

orders. Furthermore, as Judge Mish says: "The language of the Act is unambiguous and simply directs the payment of interest on valid outstanding orders of the Commissioners issued prior to December 1, 1938. It would take a far stretch of the imagination to see in the Act any intent on the part of the Legislature to revive claims previously barred by the Statute of Limitations. If it had been so intended the least that could have been done would have been to plainly state the purpose as such. Our conclusion is that the plain meaning of the words of the Act permit of no such construction." It is, therefore, unnecessary to consider whether, if the Act purported to revive claims barred by limitations, it would be unconstitutional.

Our construction of the Act disposes of a contention by the plaintiff that his claim is a liability imposed by statute, and therefore is a specialty and is not subject to the three years' period of limitations. *Sterling v. Reecher,* 176 Md. 567, 569, 6 A. 2d 237. Moreover, a suit on an implied assumpsit for money paid, even if expressly authorized by statute, would not be a suit on a liability imposed by statute. *Metropolitan Railroad Co. v. District of Columbia,* 132 U. S. 1, 12-13, 33 L. Ed. 231; *Baltimore v. Finance Corporation,* 168 Md. 13, 17-18, 176 A. 480.

Nor is this a case within Section 14 of Article 57. No facts alleged show either (*i*) that the plaintiff "has been kept in ignorance of his cause of action by fraud" of the defendant or (*ii*) that "such fraud with usual or ordinary diligence might not have been known or discovered" within three years before this suit.

The four orders "issued" or "passed" by the County Commissioners in 1942 do not remove the bar of limitations or otherwise support the plaintiff's claim. Since 1939 the County Commissioners have had no authority at all to issue orders to creditors of the County. An invalid claim cannot be validated by an invalid order. Furthermore, whatever power municipal bodies or officials may have to acknowledge claims barred by limitations

is narrowly restricted. *Taylor v. Commissioners of Perryville*, 132 Md. 412, 420-421, 104 A. 475. Assumption of ungranted power to issue or reissue municipal warrants or orders does not extend the period of limitations applicable to the original claim. *Snyder Township v. Bovaird*, 122 Pa. 442, 15 A. 910.

Section 91 of Article 5 of the Code provides: "Any person *a party to the proceedings* feeling himself aggrieved by any decision or order of the county commissioners, *or any taxpayer not a party to the proceedings,* may appeal to the circuit court for the county at any time within sixty days after the time of the making of such decision or order, * * *." (Italics supplied to indicate amendment by Acts of 1900, Ch. 494.) Section 92 provides: "Upon such appeal either party shall have the right to a trial by jury, and the said circuit court shall be authorized to ratify, reject, alter or amend proceedings before the county commissioners and in said court, so as to bring the merits of the case fairly to trial; and the said court is hereby further authorized to pass such judgment in the case as the county commissioners ought to have passed, including costs; and such judgment shall be final, and may be enforced by due process of law." These provisions originated with Section 13 of Chapter 220 of the Acts of 1853, which conferred upon the County Commissioners powers to open, alter and close public roads. The other sections of that act (as since amended) are now Section 13 and Sections 143 to 159, inclusive, of Article 25. Other statutes have given a right of appeal from the County Commissioners to the Circuit Court. Acts of 1834, Ch. 253, Sec. 1, Code of 1888, Art. 25, Sec. 117, relating to opening private roads (Act held unconstitutional in *Arnsperger v. Crawford*, 101 Md. 247, 61 A. 413, 70 A. L. R. 497) ; Acts of 1856, Ch. 308, Sec. 9, Code (1939), Art. 25, Secs. 35-37, building bridges; Acts of 1858, Ch. 271, Sec. 19, Art. 25, Sec. 76, draining lands.

The plaintiff argues that the action of the County Commissioners in 1942 in issuing new orders for the

aggregate amount of the old, plus interest from 1919, amouted to an administrative decision, which, in the absence of an appeal, is now *res adjudicata* as to plaintiff's claim and the defense of limitations. That an unauthorized, unlawful and even fraudulent act of municipal officials can be made final and withdrawn from the ordinary jurisdiction of the courts by calling it a "decision" in a "proceeding" before the faithless officials themselves, is a novel idea. Deriving this conclusion from a ninety-year-old road law is no less remarkable. Issuance of a municipal warrant or order is not a judicial determination. *Wall v. County of Monroe, supra,* 103 U. S. 79, 26 L. Ed. 430. Nor is it an administrative or *quasi-judicial* decision which is appealable under Section 91 of Article 5. Action by the County Commissioners on pecuniary claims by or against the county is not a decision appealable under that section. We intimate no opinion as to what orders or decisions of the County Commissioners, if any, in matters other than road cases, are so appealable. *Miles v. Stevenson,* 80 Md. 358, 366-368, 30 A. 646. *Cf. Worcester County Commissioners v. School Commissioners,* 113 Md. 305, 313, 77 A. 605.

Besides the allegations regarding plaintiff's claim for $11,667.05, plus $15,575.45 interest, his bill of particulars contains an allegation that in November and December, 1942, there were issued to plaintiff four orders, for sums aggregating $246 "for expenses incurred on business for the County Commissioners, and the further expense of about $75.00 was incurred in or about December, 1942, on business for the Commissioners for which no order was issued." As we have said, the County Commissioners in 1942 had no authority to issue any orders to creditors of the County. Furthermore, no facts are alleged which show that plaintiff had any authority to incur expenses for, and obtain reimbursement from, the County. If we assume from other pleadings that these expenses were incurred by him as a County Commissioner, then Section 84 of Article 12, as amended by Laws 1939, Ch. 770, was applicable. It provided: "* * *

When it is necessary for said Commissioners or their agents to leave the county for the proper transaction of the business of the county, they shall be entitled to receive as a body, their actual traveling expenses. The above salary and transportation allowances shall be in lieu of all other compensation and expenses, but not more than $300 may be so expended in any one year." No facts alleged show these expenses to be of the kind authorized by Section 84; the amount is in excess of the amount so authorized. The allegation regarding this $321 therefore states no claim and is mere surplusage.

The plaintiff's motion to strike the plea of limitations from the record was properly overruled. If the applicable rule of Court is correctly stated in the appellee's brief, the plea was filed in time, *i.e.*, before the rule day "further time to plead such pleas was given by the Court," and the plea was filed within the time given. In any event, the motion came too late. Any right to object to the plea was waived by filing the replication. *Wilken Mfg. Co. v. Melvin,* 116 Md. 97, 106, 81 A. 879; *Stockett v. Sasscer,* 8 Md. 374, 377; *Hutton v. Marx,* 69 Md. 252, 257, 14 A. 684; *Poe on Pleading* (Tiffany Ed.), Sec. 618.

Since the plea of limitations and the plea of *res adjudicata* are each a bar to plaintiff's claim, it is unnecessary to consider the plea for defense on equitable grounds. If the facts alleged constitute a defense available at law, the plea is not good. *George v. Farmers' & Merchants' Bank,* 155 Md. 693, 699-700, 142 A. 590, and cases cited. *Poe on Pleading* (Tiffany Ed.), Sec. 667A.

*Judgment affirmed, with costs.*