## GLOYD ET AL. *v.* TALBOTT

(Three Appeals in One Record)
[No. 74, September Term, 1959.]

180

*Decided December 16, 1959.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND and HORNEY, JJ.

*Keith L. Seegmiller,* with whom was *Cecil E. Custer* on the
brief, for the appellants.

*Barnard T. Welsh* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

Roy L. Talbott brought suit in equity, as a citizen, taxpayer and resident of Gaithersburg, Montgomery County, Maryland, on behalf of himself and all other taxpayers, seeking a declaratory decree that certain payments of money from Town funds to the Mayor and former Mayor, and to certain past and present members of the Town Council, were illegal and *ultra vires*. The appellants answered contending that the payments were legal and setting up limitations and laches. After a hearing at which testimony was taken and several stipulations submitted, the chancellor declared that the payments mentioned in the bill were illegal, and that recovery was not barred by limitations or laches. Without further hearing she then entered money judgments against each of the individual appellants in favor of the appellee for the use and benefit of the Town. Among other things, the appellants contend here that the chancellor included, in some of these judgments, sums not claimed in the bill and sums paid after the filing of the bill, although she seems to have left open, for determination in future actions, recovery by the appellants of sums fairly earned for special services rendered, or for reimbursement of sums advanced.

The question of equity jurisdiction was not squarely raised in the pleadings, although the answer denied allegations of "irreparable loss and special damage." Assuming that this denial is sufficient to raise the issue (cf. *Barnes v. Webster,* 220 Md. 473), we have no doubt that the suit lies. We have often held that equity will restrain a municipal corporation from performing an unlawful or *ultra vires* contract, at the suit of a taxpayer. See *McKaig v. City of Cumberland,* 208 Md. 95, 102, and cases cited. See also *Pressman v. D'Alesandro,* 211 Md. 50, 54. There was a prayer for injunction in the instant case. We have held that once equity takes jurisdiction it will afford complete relief, even as to payments not due when the bill is filed. *Konig v. M. & C. C. of Balto.,* 128 Md. 465, 472. It is generally held that an action at law by a taxpayer, on behalf of a municipal corporation, to recover amounts illegally paid, will lie as a derivative action, usually in a court of law. See 18 McQuillin, *Municipal*

*Corporation,* § 52.18 (3rd Ed., 1950). Recovery of money had and received under the common counts has been recognized as equitable in character. 1 Poe, *Pleading and Practice* § 117 (Tiffany's Ed., 1925). See also *Donnally v. Welfare Board,* 200 Md. 534; *State, Use, Emp. Sec. Bd. v. Rucker,* 211 Md. 153, 157. The existence of a remedy at law or in equity is not a bar to declaratory relief. *Turner v. Mfrs. Casualty Ins. Co.,* 206 Md. 601.

This suit was filed on April 1, 1957. The complaint charged that the Mayor and Council passed a resolution on July 3, 1950, stating that "for their services rendered the Town of Gaithersburg" the "Mayor be paid $25.00 and the Councilmen $15.00 per month effective July 3, 1950, Authority Article 23A of the Maryland Public General Laws". Payments were made regularly thereafter in the amounts stated until December 3, 1956, when another resolution was adopted, "pursuant to the recommendations of the Town Attorney," that the "minute of July 3, 1950, be hereby rescinded because it was null and void due to erroneous choice of language used therein."

The Montgomery County Code (1955), sec. 52-6 (as enacted by chapter 351, sec. 3, Acts of 1914), after providing for the election of a mayor, who, with four other persons, "shall constitute the council," declares that "They shall receive no pay for their services *as such,* except the mayor, who shall receive the fees hereinafter allowed." (The reference to fees is not here material; it relates to fees when acting as Justice of the Peace.) The words italicized represented a change in the charter as it stood under chapter 292, sec. 3, Acts of 1906. Sec. 52-16 of the 1955 Code, (as enacted by ch. 351, sec. 9, Acts of 1914), provides: "The council may allow any of the officers of the town *such* compensation [for their services] as may be deemed reasonable *and may in their discretion, appoint any one of their number to superintend, supervise or oversee any public works or improvements; to protect the public interest in the construction, installation or equipment of any public improvement, and pay him a reasonable compensation therefor.*" The italicized words were added

in 1914, and the bracketed words omitted, in the same Act that amended section 3.

We think the construction of the 1914 law is clear, despite the semi-colon in section 9, which seems to be misplaced. The word "their", as twice used in section 9, refers to the council, and permits the payment of compensation to "any one of their number" for the services performed by "him", in the categories mentioned. The amendment to section 3, differentiates services performed as members of the council, from those performed under section 9. We think the chancellor erred in holding that only officers of the town, as distinguished from the mayor and the other members of the council, were eligible to receive payments for services rendered outside the scope of their duties as members. We reach this conclusion as a matter of grammatical construction, and in the light of the legislative history.

In so holding, however, we do not attempt to justify the monthly payments authorized in the resolution of July 3, 1950. The chancellor found no evidence in the record to support the argument that the councilmen fixed a "commutated sum to reimburse themselves." The claim that the payments were "for out of pocket expenses" or "as compensation for services rendered" is negatived by the absence of vouchers, in many cases, and an absence of proof of any study of average expenses, prior to the adoption of the resolution, or, indeed, of "appointment" or employment to render specific services prior to their rendition. The fact that the resolution was declared "null and void" in 1956, was, in effect, an admission of error in adopting a blanket authorization for the unconditional payment of flat monthly amounts, whether earned or not. There is also force in the appellee's contention that under Code (1957), Art. 23A, sec. 2 (26), enumerating express powers, the salaries of the members of the legislative or ordinance-making body of the municipal corporation, as distinguished from other municipal officers and employees whose salary or compensation they are authorized to fix, "may be changed only if such ordinance be approved by the majority of the qualified voters of the municipality". This condition was not met. It may well be that such a change,

during a term of office, would run counter to sec. 35, Art. 3 of the Maryland Constitution. Cf. *Pressman v. D'Alesandro, supra* (p. 55), and *Comptroller v. Klein,* 215 Md. 427, 433. We do not suggest, however, that either the Constitution or the Express Powers Act would prevent payments for services of the type authorized in section 52-16 of the local code. But it is our view that the Resolution of July 3, 1950, exceeded the limits of that section.

The chancellor held that neither limitations nor laches would bar recovery in the instant case. Her reasoning was that the council believed "honestly but mistakenly" that the resolution was valid, and that they "discovered" the mistake when the resolution was rescinded. Her conclusion was that the three-year Statute of Limitations (Code (1957), Art. 57, sec. 1), although applicable, did not begin to run until this "discovery", which was about four months prior to the filing of suit. We think the conclusion was in error. Ordinarily limitations on an implied assumpsit for money paid run from the dates of the payments, with exceptions in cases of fraud, misrepresentation or concealment not here relevant. Cf. *Giessman v. Garrett County,* 185 Md. 350, 362, *Crawford v. Richards,* 197 Md. 284, 287, and *Piper v. Jenkins,* 207 Md. 308, 315. If we assume, without deciding, that there is another exception in the case of mistake, the "discovery" referred to in the cases cited is that of the complainant, not that of the respondent. It is the complainant's lack of knowledge, induced by the respondent's inequitable conduct, that tolls the statute. The complainant must act with reasonable diligence after he has been put upon notice. See 34 Am. Jur., Limitation of Actions, § 174 and note 106 A.L.R. 1338. In the instant case the record does not show when the appellee first learned of the Resolution of July 3, 1950, although one witness testified without contradiction that he "was talking about it a year or so" before it was rescinded in 1956. The earlier resolution was a matter of public record, and it was stipulated that yearly financial statements issued by the council listed the payments, at least in total amounts, made to each of the individual appellants. It was also shown that the appellee had been a member of the Council in 1936, and re-

ceived certain payments himself in that year, for services as Assessor. No other taxpayer joined in this suit.

The real question posed here, as we see it, is not whether the statute was tolled by mistake on anyone's part, but whether in a derivative suit to recover an illegal diversion of public funds, the defenses of limitations or laches are applicable at all. In *Donnally v. Welfare Board, supra,* we held that in a suit by the Board on implied assumpsit to recover moneys paid as old age assistance, from the administratrix of the recipient, the action was barred by the non-claim statute. There is a split of authority on the point in other states. See note 34 A.L.R. 2d 1003. But that case is not in point here, and we have found no Maryland case precisely in point. It seems to be generally recognized that Statutes of Limitations are applicable to municipal corporations as well as private individuals. See 34 Am. Jur., Limitation of Actions, § 397, and note 113 A.L.R. 376. We see no reason why limitations should not apply to the derivative suit in the instant case and we hold that they do. Cf. 18 McQuillin, *Municipal Corporations,* § 52.40 (3rd Ed., 1950). It is well settled that the statute applicable in an action at law will be applied by analogy in equity. *Rettaliata v. Sullivan,* 208 Md. 617, 621. We find no merit in the appellee's contention that there was a breach of an express trust. At most, the trust is only constructive. Cf. *Giessman v. Garrett County, supra,* and *Crawford v. Richards, supra.*

On the point of laches, it has been said that an equity court will temper the relief according to the circumstances of the particular case. Cf. *Konig v. M. & C. C. of Balto., supra.* It has also been said that laches should not be applied against a public body, or in a derivative suit with the same rigor as against an individual. See *Thornton v. Village of Ridgewood,* 111 A. 2d 899 (N. J.). The reasoning seems to be that laches is a special application of the doctrine of estoppel, which does not generally apply against a public body. See note 1 A.L.R. 2d 338, 351. We see no reason for applying it in the instant case, at least as to payments made subsequent to April 1, 1954.

It follows from what we have said that the case must be

remanded. The chancellor should hold a hearing in conformity with Code (1957), Art. 31A, sec. 8, to determine whether any payments subsequent to April 1, 1954, can be supported under section 52-16 of the local code (1955). Cf. *Turner v. Mfrs. Casualty Ins. Co., supra* (206 Md. 601, 610). On remand, the chancellor can consider the point raised on this appeal by the administrator of one of the councilmen, who died while the suit was pending, that he had not been properly made a party under Maryland Rule 220 d.

> *Decree and judgments reversed and case remanded for further proceedings in accordance with the views here expressed, costs of this appeal to be paid one-half by the appellants and one-half by the appellee.*