**Gen. 93]** 93

## COUNTIES

**CODE REVISION – WHETHER REPEAL OF STATUTORY PROVISIONS ALLOWING CITIZENS TO APPEAL COUNTY BRIDGE WORK DECISIONS WOULD EFFECT A SUBSTANTIVE CHANGE IN THE LAW**

November 16, 2011

*Kelly G. Dincau*
*Department of Legislative Services*
*Office of Policy Analysis*

In connection with the ongoing code revision process, you have requested our opinion whether Article 25, §§46 and 47 of the Annotated Code of Maryland, which grant citizens the right to appeal a decision of county commissioners to build or repair a bridge, may be repealed without effecting a substantive change in the law. Specifically, you are concerned that these two sections may assign a nonjudicial function to the court, in violation of the separation of powers doctrine expressed in Article 8 of the Declaration of Rights, and that they would therefore be unenforceable.

In our opinion, a repeal of these statutes would effect a substantive change in the law. Sections 46 and 47 grant a remedy to citizens who might otherwise lack standing to appeal a particular bridge decision and trigger procedures under the Maryland Rules that would not otherwise apply to such appeals. While an argument can be made that the statutory language invites a circuit court to exceed its judicial function, we cannot say with certainty that such an argument would either apply or prevail in every case. We therefore recommend that these sections not be repealed through the code revision process.[1]

---

[1] You also asked whether, if the portions of §§46 and 47 are unconstitutional, they could be severed from the remainder of the bridge provisions of Article 25. In light of our conclusion that the sections are not clearly unconstitutional, we do not address this question.

**I**

**Article 25 Bridge Provisions**

The two provisions that are the subject of your inquiry govern a citizen's appeal of a decision by county commissioners whether to build or repair a bridge. These appeal provisions are best understood in the context of the statutory scheme of which they are a part. Under the Article 25 bridge statutes, the Legislature granted county commissioners the power – now extended to all forms of county government – to build and repair bridges, levy property taxes to cover the expenses, and conduct proceedings on citizen applications for the performance of those bridge works. The Legislature also subjected these decisions concerning bridges to judicial review upon an appeal by "any citizen."

*A.    Origin*

The General Assembly originally enacted the predecessor of the Article 25 bridge provisions in 1856. Chapter 308, Laws of Maryland 1856. Although that act has been recodified a number of times in various sections of Article 25 of the Annotated Code of Maryland, the statutory scheme, and particularly the appeal provisions, have changed little in substance.[2] *See* Annotated Code of Maryland, Article 25, §§34 - 50A. These provisions apply in every county, regardless of the form of local government.[3]

---

[2] Chapter 308 included the general power to build or repair bridges, now codified at Article 25, §26 for most counties. The rest of Chapter 308 has been divided into the 21 separate sections now appearing at Article 25, §34 *et seq*. In 1962, the Legislature enacted two changes to the appeal procedures, neither of which is pertinent to this opinion. Chapter 36, Laws of Maryland 1962.

[3] As originally enacted, the statute applied to the "commissioners of the several counties of this State." Chapter 308, §1, Laws of Maryland 1856. Subsequent recodifications of the statute, enacted after the creation of the two home rule methods of county government, retained the reference to "county commissioners." In 2010, the General Assembly made §§34 through 37 and §§38 through 49 explicitly applicable to the code home rule counties and every charter county, except Baltimore City. Chapter 699, §2, Laws of Maryland 2010. Two sections omitted from that law – §§37A and 37B – apply only to Cecil County and Dorchester County. Other county-specific bridge provisions appear elsewhere in

(continued...)

### B.  *Application to Construct or Repair a Bridge*

The Article 25 bridge provisions set forth a procedure under which a person may apply for the construction or repair of a bridge. Article 25, §§34 - 45.  An application for building or repairing a bridge is to be made by petition to the governing body of a county. §34.  The applicant is to give public notice "in the same manner and for the same length of time prescribed for applications for opening roads." §35.[4] The county commissioners, after "they have heard the reasons and evidences for and against the application" are to decide the "case" under a standard of promoting the public convenience. *Id.* If the commissioners grant the application, they "shall, at their usual time for levying taxes, levy on the assessable property of the county a sum sufficient to pay for the bridge and its embankment and abutments." §36.  Sections 37 through 39 set forth procurement, inspection, and payment procedures.

Special procedures apply to applications for the construction or repair of a bridge over a geographical feature that divides adjacent counties.  Article 25, §§40 - 45.  If both boards of commissioners deem the petition "reasonable," each board appoints three "disinterested and discreet examiners." §40.  The examiners are then to meet and determine such matters as "the expediency of building or repairing the bridge, the place where, the plan, material and relative portion of the cost each of the adjoining counties should pay." §41.  If the examiners report the proposed bridge work "as proper and expedient" to their respective county commissioners, the commissioners are to direct the examiners to advertise for sealed proposals to perform the work.  §42.  Sections 43 through 45 elaborate on procurement and cost allocation procedures.

---

[3] (...continued)
Article 25. *See, e.g.,* Article 25, §§10B and 10I, respectively addressing the powers of Carroll County and St. Mary's County.

[4] The Legislature had enacted similar provisions with respect to roads in 1853.  Chapter 220, Laws of Maryland 1853; *see also* 93 *Opinions of the Attorney General* 103, 104-05 (2008) (summarizing Article 25 roads provisions).  The 1856 bridge statutes incorporated some of those provisions by reference.  When the Laws of Maryland were codified in 1888, both sets of laws were placed in Article 25 along with other statutes granting powers to county commissioners.

### C. *Appeal under Sections 46 and 47*

The appeal provisions of §§46 - 47 apply to a county bridge work decision, regardless of whether the bridge is located in a single county or links two counties.[5] Section 46 confers on citizens of an affected county the right to appeal the county's decision and sets a deadline for filing an appeal:

> In all cases, upon representation in writing of any citizen or citizens of any county in which the county commissioners may determine to build or repair any bridge or unite with an adjoining county to build or repair any bridge between the said adjoining counties filed before a contract for building or repairing has been made that the said determination of the county commissioners is inexpedient, and desiring an appeal from such determination, the county commissioners shall grant such appeal.

Article 25, §46.[6]

Section 47 allows the appellant access to county records relating to the bridge work decision, provides for jurisdiction in the circuit court, and states a standard of review:

> Upon such appeal being taken, the county commissioners shall afford the appellant, or his counsel, with full opportunity to examine the books and papers of the commissioners relative to the matter. The circuit court shall

---

[5] The captions added by legal publishers to some editions of the code are therefore slightly misleading. In particular, the Michie captions to §46 – "Between counties – Right of appeal" – and to §47 – "Between counties – procedure on appeal" – suggest that the appeal provisions apply only to decisions concerning bridges between two counties. The captions are not part of the law. Article I, §18.

[6] As enacted in 1856, the statute provided that, upon granting the appeal, the county commissioners "shall cease all further proceedings until the appeal is decided by the circuit court of the county...." Chapter 308, §9, Laws of Maryland 1856. This provision was deleted in 1962. Chapter 36, Laws of Maryland 1962.

> proceed to try and determine the matter according to justice and right, with or without the aid of a jury, as the parties may agree or the court may order.

Article 25, §47.

## II

## Discussion

### A. *Whether Repeal of Sections 46 and 47 Would Effect a Substantive Change*

You ask whether a repeal of §§46 and 47 would effect a substantive change in the law. In our opinion, these sections confer standing on citizens who might otherwise lack it, and so a repeal would effect such a change. Furthermore, the mere existence of a statute granting a right to a judicial review of an administrative act brings into play rules and procedures that would not otherwise apply.[7]

#### 1. Effect on Standing to Challenge a Decision to Construct or Repair a Bridge

Under the common law, a person's standing to bring a judicial action "generally depends on whether one is aggrieved, which means whether a plaintiff has an interest such that he [or she] is personally and specifically affected in a way different from . . . the public generally." *Jones v. Prince George's County*, 378 Md. 98, 118, 835 A.2d 632 (2003) (citations and some internal quotation marks omitted). A taxpayer may show common law aggrievement by alleging that the complained-of action "may injuriously affect the taxpayer's property," *120 West Fayette Street, LLLP v. Mayor of Baltimore*, 407 Md. 253, 267, 964 A.2d 662 (2009), but a person's status as a citizen of the jurisdiction does not by itself meet the aggrievement test. The common law, however, is subject to change

---

[7] We have not undertaken to identify all of the possible substantive effects of repeal. Particularly, we have not examined whether the various counties have provisions that might govern a person's appeal if §§46 and 47 were repealed.

by the Legislature,[8] which may confer standing on persons unable to establish the requisite aggrievement. For example, Article 66B, §4.08(a) grants standing to "any taxpayer" to appeal a zoning decision of a municipal board of appeals, regardless of whether the taxpayer is "aggrieved." *Boulden v. Mayor*, 311 Md. 411, 414, 535 A.2d 477 (1988).

By enacting §46, the Legislature conferred standing on "any citizen or citizens" of the county in question. So, while status as a citizen would not necessarily suffice to establish aggrievement for purposes of standing under the common law, that status would suffice under §46. There do not appear to be other statutes that would confer such broad standing in cases involving Article 25 bridge petitions. Thus, the repeal of §46 would change the law by restricting standing for some county citizens.[9]

2. **Effect on the Judicial Review of Administrative Actions**

The existence of a statutory remedy under Article 25 affects whether other remedies are available and hence would also affect the procedure governing judicial review.

*a.   Effect of Article 25 Remedy on Other Remedies*

The existence of the Article 25 appeal provisions effectively precludes a petitioner from seeking judicial review through a declaratory judgment or mandamus action. The Declaratory Judgment Act provides: "if a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding [under the Act]." Annotated Code of Maryland, Courts & Judicial Proceedings Article ("CJ"), §3-409(b). Similarly, the remedy of mandamus is available only if there is no statutory provision for judicial review. *Dep't of Health v. Walker*, 238 Md. 512, 522-23, 209 A.2d 555 (1965); *see also*

---

[8] Maryland Declaration of Rights, Article 5.

[9] In 93 *Opinions of the Attorney General* 103 (2008), we concluded that other provisions of Article 25 that authorize county commissioners to take various actions as to county roads were not implicitly repealed by the enactment of Article 66B, which grants land use powers to certain counties. That opinion noted that a provision allowing a person to request the opening, alteration, or closure of a public road was not duplicated in Article 66B. *Id.* at 112-13.

*Goodwich v. Nolan*, 343 Md. 130, 146, 680 A.2d 1040 (1996) (before a court "grant[s] a writ of mandamus to review discretionary acts, there must be both a lack of an available procedure for obtaining review and an allegation that the action complained of is illegal, arbitrary, capricious or unreasonable"). That principle existed before the Article 25 bridge provisions were enacted, and the Court of Appeals applied it in the one case in which it has discussed the Article 25 appeal provisions. *See Bembe v. County Commissioners of Anne Arundel County*, 94 Md. 330, 51 A. 183 (1902).

*Bembe* involved an appeal of an equity court's dismissal of a petition for a writ of mandamus to compel county commissioners to repair an inoperable drawbridge. The Court addressed "the single question as to whether there is an adequate legal remedy for the redress of the wrong complained of...." 94 Md. at 331. The Court held that the bridge application and appeal procedures provided an adequate legal remedy:

> Thus the statute in explicit terms gives to the [petitioners] an adequate and complete remedy, adapted to the precise question of which they complain and moulded by the legislature to fit the exact circumstances of the case. Should a Court of law upon an application for a writ of *mandamus* undertake to order the County Commissioners to repair the bridge it could only do so by deliberately disregarding and repudiating the statutory remedy especially provided to meet just the contingency which is here presented. In the face of this specific remedy neither the Court below nor this Court on appeal could .... undertake to interpose by the writ of mandamus, and thereby deprive the Circuit Court of the clearly defined appellate jurisdiction exclusively conferred upon it.

*Id.* at 334.[10]

---

[10] The decision in *Bembe* was consistent with the effect that the Court had accorded to statutes providing for review of road decisions. In 1848, for instance, the Court addressed a case in which the petitioner had

(continued...)

When discussing the availability of mandamus in other contexts, the Court of Appeals has, consistently with the holding in *Bembe*, cited the Article 25 bridge provisions as an example of a statutory remedy that precludes the remedy of mandamus.  *See Giessman v. County Commissioners*, 185 Md. 350, 363, 44 A.2d 862 (1945); *County Comm'rs of Carroll County v. Rickell*, 146 Md. 463, 470, 126 A. 711 (1924); *Commissioners of Anne Arundel County v. Baltimore Sugar Refining Co.*, 99 Md. 481, 488, 58 A. 211 (1904); *Miles v. Stevenson*, 80 Md. 358, 367, 30 A. 646 (1894).

A repeal of §§46 and 47 would thus remove the bar those sections pose to a person's pursuit of judicial review under the mandamus and declaratory judgment statutes and rules.

### b.     *Filing Deadline and Content of the Petition for Review*

Each mode of seeking judicial review has "domino-type consequences."  *Thompson v. State Farm Ins. Co.*, 196 Md. App. 235, 250, 9 A.3d 112 (2011).  Those consequences depend on whether the right to judicial review is granted by statute and, if not, on whether the decision in question was quasi-judicial in nature or legislative in nature.  Among other consequences, a repeal of the Article 25 appeal provisions would change the applicable deadline and the content required of a citizen's initial filing.

When, as in this case, a statute provides for judicial review, Maryland Rules 7-201 *et seq.* govern procedure in the circuit court. Under §46, an appeal must be filed "before a contract for building or repairing has been made...," and a citizen need only submit a

---

[10] (...continued)
requested that the court enjoin Baltimore City from widening a certain street. *Methodist Protestant Church v. Mayor and City Council*, 6 Gill 391 (1848).  An act applicable to Baltimore City then provided for appeals by interested persons to the Baltimore City Court.  The Court of Appeals held that the petitioner's action was barred by the statutory remedy because the "complainant  ... could, in the mode prescribed by the [statute], by an appeal to the City Court ..., have been amply protected and redressed against all the illegality and injustice of which it now complains." *Id*. at 400; *see also Hazlehurst v. Baltimore*, 37 Md. 199, 220-21 (1872) ("where an appeal is given by law ...  the legality and regularity of the [commissioners'] proceedings, are open for review on that appeal, and redress on such grounds must be sought in that mode only").

representation that the "determination ... is inexpedient" and that the citizen "desir[es] an appeal." Rule 7-203(a) incorporates the applicable statutory filing deadline and thus makes the §46 deadline applicable. Rule 7-202, like §46, only requires the petitioner to provide basic information; neither provision requires the petitioner to allege a factual basis for the appeal or identify the issues to be raised. [11]

These procedures, among others,[12] would change if the Article 25 appeal provisions were repealed. If the decision were deemed quasi-judicial in nature, the "administrative mandamus" rules at Maryland Rules 7-401 *et seq.* would apply. Rule 7-402(a), by incorporating the timing requirements of Rule 7-203, sets a deadline within 30 days after various events that pertain to the issuance of the decision. None of those events is keyed to the formation of a contract for bridge work. The content of the initial complaint would not change, because Rule 7-402 incorporates the requirements of Rule 7-202.

---

[11] Rule 7-202(c) provides, in pertinent part:

> The petition shall request judicial review, identify the order or action of which review is sought, and state whether the petitioner was a party to the agency proceeding. If the petitioner was not a party, the petition shall state the basis of the petitioner's standing to seek judicial review. No other allegations are necessary. ...

The relevant agency and other interested parties may file a similarly brief response. Rule 7-204. Rule 7-206 provides for the filing of a record or statement of the agency proceeding. Once the record has been filed, the parties may submit memoranda outlining the relevant facts and their respective contentions. Rule 7-207.

[12] For example, §47 arguably entitles an appellant to greater access to county records in some cases than might be available through discovery or the Public Information Act. Its repeal could thus effect a substantive change in the law on the accessibility of records pertaining to bridge construction and repair.

If the decision were deemed legislative in nature,[13] the petitioner's options might include actions for injunctive relief (subject to Rule 15-501 *et seq*., among others), declaratory relief (subject to the Declaratory Judgment Act, CJ §§3-401 *et seq*. and various rules), or mandamus (subject to CJ §§3-8B-01 and 02 and Rule 15-701). *See Talbot County,* 415 Md. at 393 (explaining methods by which a petitioner may seek the court's exercise of its inherent powers to review a legislative action); *see also Wilson v. Simms,* 380 Md. 206, 223-24, 844 A.2d 412 (2004) (explaining that "where the exercise of discretion is permitted, mandamus ordinarily will not lie"); *O'Brien v. Bd. of License Comm'rs*, 199 Md. App. 563, 578-80, 23 A.3d 323 (2011) (distinguishing between "administrative mandamus" and "traditional mandamus"). In each event, the filing deadline would likely be governed by the common law doctrine of laches. *See, e.g., Ross v. Board of Elections*, 387 Md. 649, 668-69, 876 A.2d 692 (2005); *see also O'Brien*, 199 Md. App. at 580 n.16 (stating the possibility that a "general statute of limitations" might also apply to a traditional mandamus action). The formation of a contract for bridge work might be relevant to a determination of laches, but it would not necessarily be determinative. Furthermore, a petitioner filing an original action for injunctive or declaratory relief or a writ of mandamus would have to file a complaint meeting the pleading requirements of Rule 2-303, notably "such statements of facts as may be necessary to show the pleader's entitlement to relief...."

In sum, the repeal of the Article 25 appeal provisions would take all bridge decisions out of the Chapter 200 rules in Title 7, make the Chapter 400 rules applicable to quasi-judicial bridge decisions, and put the legislative bridge decisions under a series of other rules, all with various consequences.

---

[13] When the decision maker has both quasi-judicial and legislative powers, the basis that the decision-maker articulates for a decision will likely govern whether it is considered quasi-judicial or legislative. The line between the two categories is not always bright. As explained by the Court of Appeals in the land use context, "[t]he greater a decision-maker's reliance on specific facts relating to a parcel of land, the more likely that the decision made is adjudicatory in nature." *Id*. (citation and quotation marks omitted). *Talbot County v. Miles Point Prop., LLC*, 415 Md. 372, 395, 2 A.3d 344 (2010). Conversely, "'[d]ecisions that are largely predicated on general facts, and on issues of law and policy, are legislative in nature.'" *Id*. A bridge decision in a particular case could thus fall into either category.

### B. *Whether §§46 and 47 Delegate a Nonjudicial Function to the Courts*

You ask whether §§46 and 47 violate the separation of powers principle set forth in Article 8 of the Maryland Declaration of Rights. Article 8 provides:

> That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other.

Under Article 8, courts "have no jurisdiction to perform a nonjudicial function, and any enactment which attempts to confer such a function [on them] is unconstitutional." *Duffy v. Conaway*, 295 Md. 242, 254, 455 A.2d 955 (1983); *see also Smigiel v. Franchot*, 410 Md. 302, 324-25, 978 A.2d 687 (2009); *Schisler v. State*, 394 Md. 519, 549-585, 907 A.2d 175 (2006).

A grant of "unguided discretion, involving ... questions of policy and expediency" is a legislative function that may not be delegated to the judicial branch. *Sugarloaf Citizens Assoc. v. Gudis*, 319 Md. 558, 572, 573 A.2d 1325 (1990). In *Sugarloaf*, the Court held that a county ethics provision empowering a circuit court to void an improper action "if the court deems voiding the action to be in the best ... interest of the public" violated the principle of separation of powers. *Id*. The Court explained that the General Assembly itself "could not validly confer on a court the power to void legislation because the court thinks it is in the public interest to do so" and that the county had therefore exceeded the powers delegated to it by the General Assembly. *Id*. at 572-73; *see also Cromwell v. Jackson*, 188 Md. 8, 25-26, 52 A.2d 79 (1947) (county ordinance authorizing the circuit court to issue liquor licenses only to a person "fit" to hold the license was unconstitutional because an applicant's fitness to hold a license was "a question of public policy or expediency depending on many matters" and therefore "not a judicial question").

Similarly, in *Department of Natural Resources v. Linchester Sand & Gravel Corp*., 274 Md. 211, 334 A.2d 514 (1975), the Court held that a statute that allowed a court or jury to displace the judgment of an administrative agency was unconstitutional. In that case, the statute authorized an appeal and a *de novo* jury trial of the

agency's determination, free of the deferential standard of review accorded to agency decisions under the Administrative Procedure Act.[14]  274 Md. at 215.  The appeal provision explicitly required the court to assess reasonableness; it provided that the court could "set aside or modify the determination" upon finding " that the decision of the board of review appealed from is an unreasonable exercise of police power."  The Court described such a scope of review as "a practice which would permit judges or jurors to substitute, on a *de novo* basis, their discretion for that of the department's experts," and thereby "reduce this agency's power, in this field, as a practical matter, to a nullity."  *Id*. at 228-29.  The Court stated that "the circuit court is constitutionally limited to an assessment of whether that determination was based on evidence sufficiently substantial so that the permit denial was not 'arbitrary and capricious.'"  *Id.* at 228.

On the other hand, a generally worded grant of judicial review of an administrative decision may be implemented without offending Article 8 if the scope of review is limited to a justiciable question, such as the legality of the decision.  For example, in *Lamb v. Hammond*, 308 Md. 286, 291, 518 A.2d 1057 (1987), a statute provided that the circuit courts had jurisdiction to hear appeals of decisions made by boards of canvassers of elections.  Rejecting a contention that the statute conferred a non-judicial function on the courts, the Court held that the legality of the board of canvassers' decision in that case was justiciable.  Similarly, in *Cicala v. Disability Review Board*, 288 Md. 254, 261, 418 A.2d 205 (1980), the Court construed a provision in the mandamus statute, which allowed for trial by jury, not to entitle a petitioner to a new trial of facts found by the agency.  Instead, a court reviewing an agency decision may only exercise its power to review legal questions,

---

[14] *See* Annotated Code of Maryland, State Government Article, §10-222(h); *see also Commission on Medical Discipline v. Stillman*, 291 Md. 390, 401, 435 A.2d 747 (1981) (courts may review administrative actions for "arbitrariness, illegality, capriciousness, or unreasonableness").  Subsequent to the *Linchester* decision, the General Assembly incorporated the judicial review provisions of the Administrative Procedure Act as the general standard to be applied for *de novo* judicial review of administrative agency action.  Annotated Code of Maryland, Article 1, §32(a) ("the term 'de novo' means judicial review based upon an administrative record and such additional evidence as would be authorized by §10–222(f) and (g) of the State Government Article").  Excepted from that section are cases from the Workers' Compensation Commission, and the Health Care Alternative Dispute Resolution Office, and certain cases from the Maryland Insurance Administration.  Article 1, §32(b).

including the question whether, from the record before the agency, "a reasoning mind could have reasonably reached [the agency's] factual conclusion...." *Id*. That power is inherently judicial, and "the separation of powers doctrine mandates that the legislature may not divest the judiciary of [its] inherent powers." *Stillman*, 291 Md. at 401; *see also Talbot County*, 415 Md. at 394 (referring to the courts' inherent powers to address abuses of discretion); *Smigiel v. Franchot*, 410 Md. 302, 324-25 (2009) (explaining the framework for a court's determination of justiciability).

The question, then, is whether the Article 25 appeal provisions more closely resemble the statute at issue in *Sugarloaf*, which attempted to confer nonjudicial powers on a court, or the statute in *Lamb*, which provided an avenue for a petitioner to seek judicial review and for the court to assess the justiciability of the questions presented.

The language of §46 would appear to bring the appeal provisions within the *Sugarloaf* Court's admonition that "questions involving ... expediency" are not judicial in nature. As noted above, §46 permits a citizen to submit in writing to the county commissioners that "the ... determination of the county commissioners [to build or repair a bridge] is *inexpedient,* and [that the citizen] desir[es] an appeal from such determination...." (emphasis added). An argument can be made, however, that §46 merely prescribes the method of seeking judicial review, that §47 generally grants jurisdiction to a court to review "the matter," does not explicitly require the court to determine expediency, and is ambiguous on that point when viewed in context.[15] So viewed, both

---

[15] The first step in statutory interpretation is gauging the clarity of the words of the statute:

> In construing statutes, we obviously begin with the language of the statute. If that language, both on its face and in context, is clear and unambiguous, we need go no further.

*Swinson v. Lords Landing Village Condo.*, 360 Md. 462, 478, 758 A.2d 1008 (2000). However, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute. *Lockshin v. Semsker*, 412 Md. 257, 987 A.2d 18 (2010). Then, "[i]n resolving [any] ambiguities, a court considers the structure of the statute, how it relates to other laws, its general purpose, and the relative rationality and legal effect

(continued...)

sections can be construed to fall within the *Lamb* category and thus to comply with Article 8. That argument follows.

The starting point is the language of the two sections, and, particularly, of §47, which sets the scope of review without explicitly incorporating the §46 reference to expediency. The appeal procedure provided by §§46 and 47 is comprised of three steps. Section 46 sets forth the first: a citizen's "representation in writing" to the commissioners that their determination to build or repair a bridge is "inexpedient" and that the citizen wishes to appeal. Section 47 then contains the next two steps: the commissioners are to provide the citizen "with full opportunity to examine the books and papers of the commissioners relative to the matter," and the circuit court is "to try and determine the matter according to justice and right...." Section 47 does not explicitly foreclose the citizen from raising issues, such as the issue of illegality, after the citizen's examination of the commissioners' books. Likewise, in contrast to the statutes addressed in *Sugarloaf, Linchester,* and *Cromwell,* §47 does not explicitly require the circuit court to reach questions of public policy or expediency; rather, it merely requires the circuit court to "try and determine the matter according to justice and right...." Section 47 thus is ambiguous on the scope of the "matter" to be addressed by the circuit court: the section might be interpreted to direct the court's review to a nonjusticiable issue, or it may simply serve as a general grant of jurisdiction to review such issues as the court finds justiciable.

The facial ambiguity of §47 persists when it is viewed in the context of the larger statutory scheme, notably, the Article 25 grants of power to county commissioners to determine when to repair and build bridges. *See* Article 25, §§1-1, 26, and 35. In *Walter v. Board of County Comm'rs*, 179 Md. 665, 22 A.2d 472 (1941), the Court, addressing a challenge to a roads decision, discussed the relative powers of the commissioners and the courts. Citing the Article 25, §1 grant of powers to build and repair bridges and roads, the Court emphasized that the Legislature had entrusted discretion to the county commissioners, not the courts:

---

[15] (...continued)
of various competing constructions." 412 Md. at 274-78 (internal citations omitted).

> A consideration of the language of the sections referred to is sufficient to demonstrate that it was the legislative intent to entrust to them judgment and discretion as to when and under what circumstances and in what order such repairs were to be made. If it were otherwise an incongruous situation would result, in that the Commissioners duly elected by the people and charged with raising money to repair the roads according to their judgment and discretion would not be permitted to do so, because taxables within the county through proceedings of this character would divest them of their judgment and discretion in spending the money so raised for repairs and thus divert it to roads which the petitioner himself considered were more in need of attention.

*Id.* at 669. Under the reasoning in *Walter*, the grant of discretionary bridge powers in §§1-1, 26, and 35 makes ambiguous the reference in §46 to an appeal of a decision deemed "inexpedient" by a citizen.

When "a statute is susceptible of two reasonable interpretations, one of which would involve a decision as to its constitutionality, the preferred construction is that which avoids the determination of constitutionality." *R. A. Ponte Architects v. Investors' Alert, Inc.*, 382 Md. 689, 718, 857 A.2d 1 (2004) (citation and quotation marks omitted); *see also Koshko v. Haining*, 398 Md. 404, 426, 921 A.2d 171 (2007). If the §47 grant of jurisdiction to review "the matter" were to be construed to give the circuit court only the power to address the expediency of the county's decision, the appeals procedures would unconstitutionally confer on the court a nonjudicial power. Furthermore, so construed, the appeal procedures, viewed by the *Bembe* Court as the petitioner's sole remedy, would also likely violate Article 8 by divesting the court of its inherent power to review the action.

These constitutional questions can be avoided by construing §47 as a general grant of jurisdiction, unqualified by the §46 requirements pertaining to the request to appeal, and enacted with the likely purpose of requiring all bridge appeals to be filed before the commissioners had contracted for the work. So construed, §47 would grant a circuit court the jurisdiction to determine the

justiciability of the questions raised by the petitioner and decide the ones within its powers.  *See, e.g., Lamb*, 308 Md. at 293.

Statutes are also to be construed to avoid interpretations that are "absurd, illogical, or incompatible with common sense." *Lockshin*, 412 Md. at 274-78. Treating the §46 requirement of a written statement of inexpediency simply as a *pro forma* notice requirement is workable; Rule 7-202 similarly provides that a petition for judicial review need only include the request for appeal, the order appealed from, and the person's status as a party or basis of standing.  Under both §46 and Rule 7-202, the petitioner must file the request for review before the decision maker is required to produce the record and thus conceivably before the petitioner has been able to identify the precise issues.  It therefore is not illogical to view §46 simply as a notice procedure triggering the commissioners' duty to produce documents and §47 simply as a grant to the circuit court to exercise its inherent powers over any justiciable issues subsequently presented to it.  That interpretation is consistent with *Bembe,* in which the Court held that the remedy displaced mandamus.  It is also  consistent with the fact that when the appeals provisions were enacted, the law was that matters of "morality and expediency"  were considered legislative and that the courts would decline to address such questions.  *See Spencer v. Dennis*, 8 Gill 314, 317 (1849).

In short, the Article 25 appeal provisions can be construed to confer upon a circuit court the jurisdiction to address a properly-filed request for judicial review and determine the issues that are justiciable.  In our opinion, the Legislature's use of the word "inexpedient" in §46 does not make the jurisdiction granted in §47 so clearly unconstitutional as to warrant the repeal of these sections through code revision.

### III

### Conclusion

The appeal procedures set forth in Article 25, §§46 and 47, are old and apparently seldom used, but, in our view, they are not clearly unconstitutional.  Furthermore, they grant standing to persons who would otherwise lack it and bring a petitioner's request for judicial review under Title 7, Chapter 200 of the Maryland Rules.  In our opinion, these sections cannot be repealed without effecting a

substantive change in the law.  Accordingly, we recommend that they not be repealed through the code revision process.

Douglas F. Gansler
*Attorney General*

Ann MacNeille
*Assistant Attorney General*

Robert N. McDonald
*Chief Counsel*
  *Opinions and Advice*